1
2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS - SPRINGFIELD

3

CHASE HUNTER,

     Plaintiff,

  v.

SUSAN A. MCCOY,
THE OHIO CASUALTY INSURANCE
COMPANY,
LIBERTY MUTUAL HOLDING CO., INC.,
WELLS FARGO CLEARING SERVICES, LLC,
AND
ROSEMARY SACCOMANI, IN HER OFFICIAL
CAPACITY AS REGISTER OF THE HAMPDEN
COUNTY PROBATE COURT AND
INDIVIDUALLY.
     Defendants.

4

Case No.:

VERIFIED COMPLAINT

RACKETEER INFLUENCED AND
CORRUPT ORGANIZATION ("RICO")
COMPLAINT

AND

COMPLAINT FOR INJUNCTIVE
RELIEF, DECLARATORY
JUDGMENT, AND DAMAGES

VERIFIED

JURY DEMAND

5

6

## Table of Contents

7
8

A.    RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ("RICO")
COMPLAINT ..................................................................................................4

9

JURISDICTION AND VENUE ....................................................................4

10

PARTIES.......................................................................................................5

11

NON-PARTIES.............................................................................................11

12

FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS............................12

13

Introduction....................................................................................................12

14

Ms. McCoy And The Ohio Casualty Insurance Company Fraud And Breach of Duty of Care....15

15

Equipped With The Fraudulent Surety Bond Issued By The Ohio Casualty Insurance Company

16

    To Ms. Mccoy, Ms. Mccoy Can And Has Advanced Her Scheme To Defraud .....................15

Probate Court Order Dated June 5, 2025, Was Automatically Stayed The Moment It Was Signed And Is Still Stayed ................................................................................................................16

Ms. Mccoy Wrongfully And Unlawfully Acted As "Personal Representative" And Has Received Money (And Expects And Intends To Receive Money In The Future) From The Assets Of Darlene Joyce Calabrese Held At Wells Fargo As Compensation On The Fraudulent Grounds That She Is Performing Honest "Personal Representative" Services When She Has No Such Authority – Ms. McCoy Has Used Ms. Calabrese's Assets To Pay For The Fraudulently-Obtained Surety Bond And The "False Letters" To Perpetuate The Fraud Of Deceiving Others To Believe That She Is The "Personal Representative" ............................18

Rosemary Saccomani, In Her Official Capacity, And Rosemary Saccomani, In Her Individual Capacity, Created False Public Documents That Indicate That Ms. Mccoy Is The "Personal Representative" And Has Been Non-Responsive To Plaintiff Hunter's Request To Correct This Error. ...............................................................................................................21

The Ohio Casualty Insurance Company, Liberty Mutual Holding Company, Inc., And Wells Fargo Clearing Services, LLC Are Participants In The Fraud Scheme..................................23

Liberty Mutual Holding Co., Inc's Role In The Fraud And Breach Of Duty Of Care .................24

Since June 5, 2025: Ms. Mccoy Misrepresented Herself To Plaintiff Hunter As The "Personal Representative" Of The Late Darlene Joyce Calabrese And Asserted This Fake Authority To Justify Making Threats To Plaintiff Hunter To Have Plaintiff Hunter Arrested ...................27

Legal Support To Establish Ms. Mccoy's Fraud – To Show That Ms. Mccoy Has No Authority To Act As The "Personal Representative"........................................................................29

Some Of The State And Federal Laws Violated ........................................................................30

RICO Injury ...............................................................................................................................33

CLAIMS .....................................................................................................................................36

FIRST RICO CLAIM FOR RELIEF – COUNT I........................................................................36

Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ............36
Against: All Named Defendants ................................................................................................36

SECOND RICO CLAIM FOR RELIEF – COUNT II .................................................................45

Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d) ...........45

Against: All Named Defendants ...............................................................................................45

PRAYER FOR RICO RELIEF .......................................................................................48

B.    THIRD CLAIM (Fraud) - COUNT III...................................................................................49

Against: All Named Defendants ...............................................................................................49

C.    FOURTH CLAIM (Civil Conspiracy to Defraud) - COUNT IV ...........................................50

Against: All Named Defendants ...............................................................................................50

PRAYER FOR RELIEF REGARDING FRAUD AND CIVIL CONSPIRACY TO DEFRAUD 51

D.    BREACH OF DUTY OF CARE – COUNT V ........................................................................51

Against: All Named Defendants ...............................................................................................51

BREACH OF DUTY OF CARE – COUNT V – PRAYER FOR RELIEF...........................54

E.    TRESPASS TO CHATTELS – COUNT VI ............................................................................55

Against: Susan A. McCoy.........................................................................................................55

TRESPASS TO CHATTELS – COUNT VI – PRAYER FOR RELIEF ..............................56

F.    CONVERSION – COUNT VII ...............................................................................................57

Against: All Named Defendants ...............................................................................................57

CONVERSION – COUNT VII – PRAYER FOR RELIEF...............................................................58

G.    VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT ("MCPA") WHICH IS MASS. G.L. C 93A, § 2(a) – COUNT VIII ..............................................59

Against:  Ms. McCoy and Ms. Saccomani, Official........................................................................59

PRAYER FOR RELIEF – MCPA..............................................................................................59

H.    INTENTIONAL INTERFERENCE WITH AN EXPECTANCY – COUNT IX ................60

Against: All Named Defendants ...............................................................................................60

PRAYER FOR RELIEF – INTENTIONAL INTERFERENCE WITH AN EXPECTANCY ......61

I.    VIOLATIONS OF THE MASSACHUSETTS CIVIL RIGHTS ACT ("MCRA") -- MASS. G.L c. 12, §§ 11 I AND 11 J  -- COUNT X ..........................................................................61

Against All Named Defendants ...............................................................................................61

PRAYER FOR RELIEF – MCRA..............................................................................................63

J.    COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND DAMAGES – COUNT XI..........................................................................................63

Against: Ms. McCoy; Ms. Saccomani, Official; and Ms. Saccomani, Individual.........................63

Violations of United States Civil Rights (42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986) ........63

PRAYER FOR RELIEF – COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES – COUNT XI ..........................................................64

K.    COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES – COUNT XII ........................................................................................65

Against: All Named Defendants ...................................................................................................65

Violations of Massachusetts Civil Rights Act (Mass. G.L c. 12, §§ 11 I - 11 J) ...........................65

PRAYER FOR RELIEF – COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES – COUNT XII.........................................................66

Affidavit - Verification.................................................................................................................67

## A. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ("RICO") COMPLAINT

### JURISDICTION AND VENUE

1. Jurisdiction: This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964; 28 U.S.C. §§ 1331, 1343(a)(1), 1343(a)(2), 1343(a)(3), 1367, 2201, and 2202; and 42 U.S.C. § 1988.

2. This Complaint involves claims for relief pursuant to, *inter alia,*; 28 U.S.C. §§ 2201 and 2202; 42 U.S.C. §§ 1985 and 1988; and 18 U.S.C. § 1964(c).

3. This Complaint involves, *inter alia,* federal laws:

        a.   42 U.S.C. 1983 (civil rights);

b.  18 U.S.C. §§ 1341, 1343, 1344, 1346, and 1349 (frauds and swindles, wire fraud, bank fraud, scheme or artifice to defraud (honest services fraud), attempt and conspiracy);

c.  18 U.S.C. § 1952 (Travel Act);

d.  18 U.S.C. §§ 1962(b), 1962(c), and 1962(d) (the Federal Racketeer Influenced and Corrupt Organization statute);

e.  18 U.S.C. § 1512(a)(2); 18 U.S.C. § 1512(b); 18 U.S.C. § 1512(d);  (witness tampering)

f.  18 U.S.C. §§ 2314 and 2315 (transmit stolen money; receive stolen money);

g.  42 U.S.C. § 1985(2); 42 U.S.C. § 1985(3); (civil rights violations) and

h.  42 U.S.C. § 1986 (action for neglect to prevent violations in section 1985 of title 42)

4. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because all defendants are domiciled in this judicial district and/or a substantial part of the events giving rise to the claims occurred, occur, and continue to occur in this judicial district. This Court also has personal jurisdiction over Defendants pursuant to 18 U.S.C. 1965(b) because in any action brought pursuant to the Federal Racketeer Influenced and Corrupt Organizations ("RICO") statute, the district court may summon other parties to that district where the "ends of justice require."

PARTIES

5.  Plaintiff Hunter is a person with a principal place of business in Hampden, Massachusetts and who is domiciled in Massachusetts. Plaintiff Hunter is a self-employed consultant for government regulatory compliance, such as, but not limited to, immigration.

6.  Susan A. McCoy ("Ms. McCoy") is an individual person with a domicile at 104 Wagon Wheel, Feeding Hills, Massachusetts, who has falsely represented herself to others to be the "executor", "administrator", and/or "personal representative" of the late Darlene Joyce Calabrese ("Ms. Calabrese"). Ms. Calabrese is Plaintiff Hunter's mother who passed away in July 2022 and whose testacy is in dispute with Plaintiff Hunter's sister, Joanne Auclair ("Ms. Auclair"). As of this moment, Plaintiff Hunter is a 50% heir to Ms. Calabrese (*see* section 2 of PDF page 2 of Exhibit 1) whose assets were valued at about $250,000 on July 9, 2022, which is the date that Ms. Calabrese died.

7.  The Ohio Casualty Insurance Company ("Ohio Ins.") is incorporated in New Hampshire with an address of: 100 Liberty Way, Dover, NH, 03820. Ohio Ins. is an affiliated insurance entity of Liberty Mutual Holding Co., Inc. ("Liberty Mutual Holding") which is incorporated in Massachusetts. Ohio Ins. issued surety bond number 999417110 (*see* Exhibit 2) to Susan A. McCoy in June 2025 which falsely indicates that Susan A. McCoy is the "personal representative" of Ms. Calabrese ("Surety Bond").

   a.  To obtain this Surety Bond, Ms. McCoy falsely presented an automatically-stayed, net-yet-final, and not-yet-enforceable court document dated June 5, 2025, ("Probate Court Order 6/5/25" in Exhibit 3) that exists in Hampden County Probate and Family Court case HD22P2394 ("Probate Court"), to an insurance agency in Pennsylvania (Marsh & McLennan Agency, Inc.), who did not comply with the law and/or did not exercise a required duty of care and who accepted Ms. McCoy's surety bond application in June 2025 and transmitted it to The Ohio Casualty Insurance Company ("Ohio Ins.") in New Hampshire to be issued. An employee of Ohio Ins., Timothy A. Mikolajewski, who is located in Washington,

made, executed, sealed, acknowledged, and delivered the Surety Bond as the "attorney-in-fact" of Ohio Ins.

   b. Ms. McCoy paid the premium cost of this Surety Bond, $1350, by unlawfully converting Ms. Calabrese's assets (which, as of this moment, Plaintiff Hunter is a 50% heir to) which are held in a bank account with Wells Fargo.

   c. Ms. McCoy unlawfully converted Ms. Calabrese's assets by fraudulently performing "personal representative" services, for a fee, which was debited from Ms. Calabrese's assets held at Wells Fargo – in the course of fraudulently applying for and obtaining this Surety Bond.

8. Liberty Mutual Holding Co., Inc. ("Liberty Mutual Holding") is an insurance holding company with an address of 175 Berkeley St., Boston, Massachusetts. It has a "member company" which uses the trade name Liberty Mutual Insurance Company ("Liberty Mutual"). Liberty Mutual is an insurance company that insures Ms. Calabrese's house and car in Massachusetts. Ms. McCoy contacted Liberty Mutual on July 11, 2025. Ms. McCoy emailed to Liberty Mutual the Probate Court Order 6/5/25 (which was automatically stayed for 30 days pursuant to Massachusetts Rule of Civil Procedure 62), Surety Bond, and/or False Letters (described below) and misrepresented herself as the "personal representative" of Ms. Calabrese. Ms. McCoy made changes to Ms. Calabrese's Liberty Mutual insurance policies which include, but are not limited to, changing the mailing address from 545 Glendale Road, Hampden, Massachusetts to 1380 Main St., #5th , Springfield, Massachusetts which is Ms. McCoy's work address – thereby giving Ms. McCoy control over Ms. Calabrese's insurance policies so that she can fraudulently perform "personal representative" services (and convert Ms. Calabrese's assets to compensate her for such) and convert Ms.

1    Calabrese's assets to pay insurance premiums to Liberty Mutual that Plaintiff Hunter has

2    been paying since July 2022.

3    9.    Rosemary Saccomani ("Ms. Saccomani, Official") is a publicly-elected official who is the

4    Register of the Hampden County Probate and Family Court in Massachusetts with an address

5    of 50 State St., 4th Floor, Springfield, Massachusetts. (*see e.g.* Election results for 2020 at

6    https://electionstats.state.ma.us/elections/view/140775/ ). She is the keeper of the Probate

7    Court records involving the late Ms. Calabrese. In June 2025, one of "Ms. Saccomani,

8    Official's" assistant clerk-magistrates, Craig T. Ornell, ("Mr. Ornell") who is an attorney,

9    relied upon this Probate Court Order 6/5/25 and this fraudulently-obtained Surety Bond --

10    that he knew was fraudulently-obtained because Probate Court Order 6/5/25 was

11    automatically stayed for 30 days and Ms. McCoy was not and is not the "personal

12    representative" and therefore had no legal grounds to purchase the Surety Bond –

13         a.   to create a false public document,

14         b.   to insert the false public document in the Probate Court record,

15         c.   to publicly publish the existence of this false document on the state's court

16              website at MassCourts.org, and

17         d.   to publish and utter this false document to Ms. McCoy.

18    This false public document is titled "Letters of Authority for Personal Representative"

19    ("False Letters') and contains a false certification, signed by "Ms. Saccomani, Official",

20    which indicates that Ms. McCoy is the "personal representative" of the late Ms. Calabrese

21    ("False Letters") (*see* Exhibit 4). The acts described in this paragraph violate, *inter alia,*

22         e.   Mass. G.L. c 267, §§ 1 and 5 which makes it a crime to make, publish and/or utter

23              false public documents with the intent to injure or defraud;

1        f.   Mass. G.L. c 268, § 13E (Tampering with record, document or other object for

2             use in an official proceeding); and

3        g.   Massachusetts Supreme Judicial Court Rule 3:12 (*see e.g.* Canon 2 of this Rule

4             which states:

5             "A Clerk Magistrate shall comply with the laws of the Commonwealth, rules of
6             court, and lawful directives of the several judicial authorities of the
7             Commonwealth.")

8
9             Canon 1 of this same Rule states:

10
11           "The word "Clerk Magistrate" in this Code, unless otherwise expressly provided,
12           shall mean anyone serving in the position of....Register..."

13
14   The injury and fraud are described in more detail below.

15   Plaintiff Hunter communicated to "Ms. Saccomani, Official", and Rosemary Saccomani,

16   individual ("Ms. Saccomani, Individual") on July 17, 2025, that Mr. Ornell created and

17   published this "False Letters" during a time when the Probate Court Order 6/5/25 was

18   automatically stayed pursuant to Mass. R.Civ.P. 62 and was not enforceable. Neither "Ms.

19   Saccomani, Official", nor "Ms. Saccomani, Individual" have responded to Plaintiff Hunter's

20   written request, (*see* Exhibit 5 which Plaintiff Hunter transmitted via the internet) that the

21   False Letters be revoked as if it never existed. On July 31, 2025, Plaintiff Hunter personally

22   asked Mr. Ornell, in person, to revoke the False Letters because he issued it in error; and he

23   did not affirmatively agree to do so and dodged Plaintiff Hunter's request by making three

24   different conflicting statements. He stated at one point, "I received the bond, I [just] issued

25   the Letters." "Letters" is the term often used to refer to the one-page document that is

26   referenced herein as the "False Letters". The fraud inherent in Mr. Ornell's statement is the

fact that the "False Letters" shows "Ms. Saccomani, Official's" signature and falsely certifies the False Letters as follows:

> "I certify that it appears by the records of this Court that said appointment remans in full force and effect. IN TESTIMONY WHEREOF I have hereunto set my hand and affixed the seal of said Court
>
> Date June 27, 2025.
>
> Rosemary A. Saccomani, Register of Probate"

> "Said appointment" refers to the appointment of Ms. McCoy as the "personal representative" of Ms. Calabrese. (*see* section 9 of PDF page 3 of Exhibit 3) which was not, is not, and has never been in "full force and effect" (explained in more detail below).

10. "Ms. Saccomani, Individual" is an individual with a domicile at 46 Dogwood Lane, Agawam, Massachusetts, who, while acting as "Ms. Saccomani, Official" acted contrary to the law, contrary to the state and/or federal constitution, and/or contrary to the mandatory duties of a Register of Probate -- and/or allowed one of her employees to do so. "Ms. Saccomani, Official" is a Massachusetts Register of Probate Court.

11. Wells Fargo Clearing Services, LLC, ("Wells Fargo") is a foreign corporation in Massachusetts (incorporated in Missouri) with an address of 1 N Jefferson Ave., St. Louis, Missouri, which holds assets in a fiduciary capacity that belong to the late Ms. Calabrese that were valued at about $150,000 when Ms. Calabrese died. Ms. Calabrese established an investment / bank account with Wells Fargo many years ago. Ms. McCoy was *sua sponte* appointed to be a "special personal representative" in May 2024 in Hampden County Probate

and Family Court case 22HDP2394 ("Probate Court"). That Probate Court Order was an interlocutory order that was appealable and was appealed – appeal still pending. A final order was entered in the Probate Court on June 5, 2025. (*see* Exhibit 3).  Pursuant to Massachusetts Rule of Appellate Procedure 3, interlocutory orders are merged with the final order and are stayed pending appeal for all the same reasons the final order is stayed. The final Probate Court Order 6/5/25 was appealed pursuant to, *inter alia,* Massachusetts General Law chapter 215, section 22. But while Ms. McCoy was appointed the "special personal representative" (which, by state law, has a term limitation of 180 days), she took control of Ms. Calabrese's bank account with Wells Fargo in the year 2024.

    a.  Ms. McCoy has never provided the Probate Court nor Plaintiff Hunter with a report of her use of Ms. Calabrese's assets held with Wells Fargo.

    b.  Ms. McCoy did not truthfully disclose to Wells Fargo that she is not the "special personal representative" and not the "personal representative" of Ms. Calabrese as of June 5, 2025 (when Probate Court Order 6/5/25 was dated).

    c.  In June 2025, when Ms. McCoy knew that she was not the "special personal representative" and not "personal representative" of Ms. Calabrese (for the reasons stated herein), Ms. McCoy converted Ms. Calabrese's funds held with Wells Fargo to purchase, *inter alia,* the Surety Bond from Ohio Ins.

NON-PARTIES

12. Craig T. Ornell ("Mr. Ornell") is an assistant clerk-magistrate, who is a lawyer, who works in the Hampden County Massachusetts Register's office. Ms. Saccomani is the Hampden County Register of Probate Court who approved and issued the "False Letters" in June 2025,

1    during a time when the Probate Court Order 6/5/25 was automatically stayed and not

2    enforceable.

3    13. Marsh & McLennan Agency, LLC, incorporated in Delaware, is the agent who received Ms.

4    McCoy's surety bond application in June 2025 and submitted it to The Ohio Casualty Insurance

5    Company for underwriting, during a time when the Probate Court Order 6/5/25 was

6    automatically stayed.

7                    FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS

8

9    Introduction

10

11    14. Ms. McCoy is an attorney and Probate Court Order 6/5/25 gives the impression that Ms.

12    McCoy was appointed to be the "personal representative" of Ms. Calabrese. But the law is

13    clear that Ms. McCoy is not the "personal representative" because, *inter alia*, Massachusetts

14    Rule of Civil Procedure ("Mass.R.Civ.P.") 62 automatically stayed Probate Court Order

15    6/5/25 at the same moment it was signed on June 5, 2025 (for thirty days); and Massachusetts

16    General Law chapter 215, section 22 automatically stayed the Probate Court Order 6/5/25 on

17    June 30, 2025, (when Plaintiff Hunter filed a Notice of Appeal) until the appeal process is

18    complete (explained in detail in ¶¶ 24 and 37 below on pages 15 and 26, respectively).

19        a.    Mass. G.L. c 190B, § 3-709 states:

20                    "(b) Whoever injuriously intermeddles with any personal property of a
21            deceased person, without being thereto authorized by law, shall be liable as a
22            personal representative in his own wrong to the person aggrieved.
23
24                    (c) A personal representative in his own wrong shall be liable to the
25            rightful personal representative for the full value of the personal property of the
26            deceased taken by him and for all damages caused to the estate by his acts; and he
27            or she shall not be allowed to retain or deduct any part of such estate, except for
28            funeral expenses or debts of the deceased or other charges actually paid by him
29            and which the rightful personal representative might have been compelled to
30            pay."
31

1       The "deceased person" is Ms. Calabrese. The person aggrieved is Plaintiff Hunter

2       who is a 50% heir to Ms. Calabrese as of this moment. The person "injuriously

3       intermeddling" are the Defendants.

4    b.   The grounds of Plaintiff Hunter's appeal of Probate Court Order 6/5/25 are

5      substantial.

6        1.   For example, the Probate Court case was substantially adjudicated off-

7             record beginning in April 2023. As one example, after one-day-of-trial at

8             about 3:55pm on March 13, 2025, the Probate Court judge instructed

9             Plaintiff Hunter and Ms. Auclair to "email" "what you want" to the

10            judge (i.e. post-trial motions).  Plaintiff Hunter objected and did not

11            agree to communicate off-record with the court and the judge said, "It

12            won't be included as part of the record". Most of the documents that

13            Plaintiff Hunter filed directly with "Ms. Saccomani, Official" after

14            March 13, 2025, and through to June 16, 2025, were not made part of

15            the public record.  Plaintiff Hunter exerted excessive effort seeking relief

16            from this "off-record" adjudication which was publicly denied by higher

17            courts. However, the off-record adjudication has thus far ceased as of

18            June 16, 2025.

19        2.   As another example, undisputed facts since November 2022 in the

20            Probate Court record establish that Ms. Auclair had looted and was

21            looting valuable property, including all papers that Ms. Calabrese kept in

22            her filing cabinet (which is where Ms. Calabrese kept her Will), from

23            Ms. Calabrese's residence right after Ms. Calabrese died (while Plaintiff

1   Hunter was out of town and was not told that Ms. Calabrese died).

2   Probate Court orders blocked the discovery process due to its desire that

3   the parties mediate and settle out of court. Ms. Auclair never responded

4   to any one of Plaintiff Hunter's discovery requests regarding, *inter alia,*

5   Ms. Calabrese's Will; and the Probate Court denied Plaintiff Hunter's

6   request to compel Ms. Auclair to respond. At the same time, evidence

7   was entered to establish that Ms. Auclair refused to mediate. Therefore,

8   the Probate Court case lingered on the docket for more than two years

9   with no meaningful adjudication and no discovery regarding, *inter alia,*

10   Ms. Calabrese's stolen Will.

11   c.   Ignorance of the law is not a defense to Ms. McCoy deceiving others to believe

12   that she is the "personal representative" of Ms. Calabrese. Plaintiff Hunter advised

13   Ms. McCoy twice that she is not the "personal representative" and explained the

14   relevant law to her. Despite being informed of the facts and the law, Ms. McCoy

15   has refused to undo her past fraudulent actions and has refused to cease future

16   fraudulent actions.

17   d.   On July 22, 2025, Plaintiff Hunter mailed, by certified mail, a notice to Ms.

18   McCoy explaining that she is not the "personal representative" and must cease all

19   related activity (*see* Exhibit 6).

20   e.   On August 1, 2025, Plaintiff Hunter told Ms. McCoy, in person, that she is not the

21   "personal representative" of Ms. Calabrese, and explained, in detail, to Ms.

22   McCoy all the reasons stated herein. And Ms. McCoy stated only, "not true", but

1    provided no explanation for her position and offered not citation to law to dispute

2    Plaintiff Hunter's assertions.

3        f.  Ms. McCoy has a history of acting tortiously against Plaintiff Hunter. Plaintiff

4    Hunter has pending litigation involving Ms. McCoy in United States District

5    Court case 3:24-cv-30115, <u>Chase Hunter v. Joanne Auclair</u> (Springfield District);

6    and Ms. McCoy is referenced in the amended complaint as AGENT 4.

7
8    Ms. McCoy And The Ohio Casualty Insurance Company Fraud And Breach of Duty of Care

9    15. In June 2025, Ms. McCoy fraudulently presented Probate Court Order 6/5/25 to The Ohio

10    Insurance Casualty Company ("Ohio Ins."). This Probate Court Order 6/5/25 is not

11    enforceable by operation of law (as explained herein). Ohio Ins. breached a required duty of

12    care and/or avoided compliance with law and issued a Surety Bond that falsely indicates that

13    Ms. McCoy is the "personal representative" of Ms. Calabrese – issued during a time when

14    Probate Court Order 6/5/25 was automatically stayed and not enforceable and therefore, not

15    to be relied upon by Ohio Ins. to issue the Surety Bond.

16
17    Equipped With The Fraudulent Surety Bond Issued By The Ohio Casualty Insurance Company To
      Ms. Mccoy, Ms. Mccoy Can And Has Advanced Her Scheme To Defraud
18
19    16. As explained herein, Ms. McCoy used the Surety Bond to fraudulently cause the issuance of

20    "Letters of Authority for Personal Representative" ("False Letters') on June 27, 2025 (*see*

21    Exhibit 4). The "False Letters" is a one-page document that is required by Mass. G.L. c

22    190B, § 3-103 to administer an estate. The False Letters could not have been issued without

23    the Surety Bond because Probate Court Order 6/5/25 required a surety bond of $300,000 (*see*

24    section 4 of PDF page 4 of Exhibit 3).

25    17. Mass. G.L. c 190B, § 3-103 states:

26        "Necessity of Appointment for Administration.

Except as otherwise provided in article IV, to acquire the powers and undertake the duties and liabilities of a personal representative of a decedent, a person shall be appointed by order of the court or a magistrate, qualify and be issued letters. Administration of an estate is commenced by the issuance of letters."

18. Ms. McCoy had no reason to obtain "False Letters" because Probate Court Order 6/5/25 that appointed her to be the "personal representative" was stayed pursuant to Mass.R.Civ.P. 62 upon the instant that it was signed (until July 6, 2025) and pursuant to Mass. G.L. c 215, § 22 (because Plaintiff Hunter filed a timely appeal on June 30, 2025, and Probate Court Order 6/5/25 is stayed pending appeal).

19. Since June 5, 2025, Ms. McCoy's past, current, and future-expected fraud against Plaintiff Hunter, against Ms. Calabrese, and against the assets of Ms. Calabrese was not, is not, and will not be possible without the help of the above-named defendants.

20. Wells Fargo is a fiduciary that holds money owned by the late Ms. Calabrese in an investment account and in an associated checking account valued at about $150,000.

21. Ms. McCoy deceived and will continue to deceive Wells Fargo with the automatically-stayed Probate Court Order 6/5/25 and with the "False Letters" -- to believe that she has legal authority to use Ms. Calabrese's financial / investment / checking accounts at Wells Fargo.

22. Wells Fargo breached a required duty of care and/or avoided compliance with the law. The law establishes that Ms. McCoy has no legal authority over the Wells Fargo account because she is not the "personal representative". Yet, Wells Fargo has allowed and will continue to allow Ms. McCoy to convert assets owned by the late Ms. Calabrese, that are held by Wells Fargo, under false pretenses.

Probate Court Order Dated June 5, 2025, Was Automatically Stayed The Moment It Was Signed And Is Still Stayed

1    23. Probate Court Order 6/5/25 was automatically stayed the moment it was signed (pursuant to

2        Massachusetts Rule of Civil Procedure 62) and continues to be stayed because Plaintiff

3        Hunter filed a timely notice of appeal of Probate Court Order 6/5/25 (*see* Exhibit 7).

4    24. Probate Court Order 6/5/25:

5        a.  is subject to appeal (*see e.g.* Mass. G.L. c 190B, § 3-412; *see also e.g.* Mass. G.L.

6            c 215, § 22);

7        b.  was automatically stayed for the first thirty days (until July 6, 2025; *see*

8            Massachusetts Rule of Civil Procedure 62); was timely appealed (*see* Exhibit 7);

9            and

10       c.  is stayed pending appeal (*see* Mass. G.L. c 215, § 22; *see also see also* <u>Gale v.</u>

11           <u>Nickerson</u>, 144 Mass 416 at 418-419 which held "[a]s we have before said, the

12           appeal from the decree of the judge of probate brings to this court the whole

13           question of the validity and propriety of the decree…The whole question is tried

14           here de novo."; *see also* <u>Smith v. Smith</u>, 175 Mass 483 at 175 which held, "While

15           the appeal was pending, that is, from December 19, 1891, until February 7, 1893,

16           a period of thirteen months and nineteen days, there was no executor of the will of

17           John B. Smith who could be sued, and no person who if sued had the right to

18           defend the suit in behalf of his estate. The effect of an appeal from a decree of the

19           Probate Court appointing an executor is to suspend the authority of the person

20           appointed to act as such. Pub. Sts. c. 156, § 12."; *see also* <u>Rooney v. Sletterink</u>, 4

21           Mass. App. Ct 124 at 127 (1876) which held, "Thus, the stay occasioned by the

22           appeal from the Probate Court continued, and the defendant could not have been

23           sued as executor earlier than fifteen days after March 7, 1973.").

Ms. Mccoy Wrongfully And Unlawfully Acted As "Personal Representative" And Has Received Money (And Expects And Intends To Receive Money In The Future) From The Assets Of Darlene Joyce Calabrese Held At Wells Fargo As Compensation On The Fraudulent Grounds That She Is Performing Honest "Personal Representative" Services When She Has No Such Authority – Ms. McCoy Has Used Ms. Calabrese's Assets To Pay For The Fraudulently-Obtained Surety Bond And The "False Letters" To Perpetuate The Fraud Of Deceiving Others To Believe That She Is The "Personal Representative"

25. Ms. McCoy has acted since at least June 16, 2025, as if Probate Court Order 6/5/25 it is not stayed and has used intra-state and interstate transmissions to

      a. create and cause the publication of false public documents in the Probate Court record,

      b. persuade others to falsely believe that she is the "personal representative" of Ms. Calabrese, and

      c. convert Ms. Calabrese's assets to promote, protect, and perpetuate this scheme.

26. Upon the false belief that Ms. McCoy is Ms. Calabrese's "personal representative", others have been tricked into giving authority to Ms. McCoy and/or to allow Ms. McCoy to assert authority over Ms. Calabrese's assets. The state law allows a "personal representative" to be compensated for such services and such compensation comes from the assets of the deceased (in this case, Ms. Calabrese). As of this moment, Plaintiff Hunter, is a 50% heir to Ms. Calabrese. Therefore, Ms. McCoy's false acts as the "personal representative" trigger compensation, from Ms. Calabrese's assets, to Ms. McCoy, for false services rendered -- which converts Plaintiff Hunter's expected inheritance to compensation to Ms. McCoy for fraudulent services. "As of this moment" refers to the fact that Ms. Calabrese's testacy/intestacy is in currently dispute because, *inter alia,* Probate Court Order 6/5/25 has been appealed.

27. Ms. McCoy's fraudulent services also involve, for example,

a.  Ms. McCoy taking money from Ms. Calabrese's bank account at Wells Fargo to compensate herself for "personal representative" services for her time used to purchase the Surety Bond.

b.  Ms. McCoy taking money from Ms. Calabrese's bank account at Wells Fargo to compensate herself for "personal representative" services for her time used to go to "Ms. Saccomani, Official's" office on June 25, 2025, to present the falsely-obtained Surety Bond to Craig T. Ornell ("Mr. Ornell") to falsely obtain the "False Letters" from Mr. Ornell so that Ms. McCoy can convert Ms. Calabrese's assets in the future to fees for her fraudulent "personal representative" services.

28. Ms. McCoy works for Plaintiff Hunter's sister, Joanne Auclair ("Ms. Auclair").

a.  *See e.g.* United States District Court case 3:24-cv-30115, Chase Hunter v. Joanne Auclair (Springfield Dist.). Ms. McCoy is referred to in this lawsuit as AGENT 4.

b.  Also, Ms. Auclair stated during a deposition in February 2025 that she had attorney-client privilege with Ms. McCoy and therefore would not provide to Plaintiff Hunter documents that Ms. Auclair prepared – (for the sole purpose of giving them to Ms. McCoy) – regarding Ms. Auclair's "position" on Ms. Calabrese's Will – thereby making Ms. Auclair's position on Ms. Calabrese's Will a secret from Plaintiff Hunter but not a secret from Ms. McCoy.

c.  Plaintiff Hunter received an unlawful and deceptive letter by email from Ms. McCoy (and subsequently received a copy of it in the mail) that was signed by Ms. McCoy, dated June 15, 2025, in which she stated "we" want the house empty by June 25, 2025 and that Plaintiff Hunter must provide Ms. McCoy with a list of items that Plaintiff Hunter wants to keep from the house no later than June 21,

1     2025. This letter stated that after June 21, 2025, Plaintiff Hunter waives any right

2     to ownership of any property in the house. The "house" is Plaintiff Hunter's

3     residence which is deeded to the late Ms. Calabrese and is located at 545 Glendale

4     Road, Hampden, Massachusetts.

5     d. Ms. Auclair has been self-dealing in the assets of Ms. Calabrese since the day Ms.

6     Calabrese died.  Ms. Auclair caused and timed Ms. Calabrese's death by

7     unplugging Ms. Calabrese's life support equipment after Ms. Calabrese was

8     unexpectedly hospitalized for seven hours. After watching Ms. Calabrese take her

9     last breath, Ms. Auclair ran to Ms. Calabrese's house and removed every paper in

10     Ms. Calabrese's filing cabinet. Plaintiff Hunter was out of town and did not know

11     that her mother was hospitalized. Ms. Auclair did not tell Plaintiff Hunter that Ms.

12     Calabrese died for about 24 hours after Ms. Auclair terminated Ms. Calabrese's

13     life support. This is described in some detail in Massachusetts Land Court petition

14     24 MISC 000722 that was filed on December 23, 2024 (*see* Exhibit 8; Ms.

15     McCoy is referred to in this complaint as AGENT) and in pending United States

16     District Court case 3:24-cv-30115 (Ms. McCoy is referred to in this complaint as

17     "AGENT 4").

18 29. Plaintiff Hunter filed two verified motions in the Probate Court in 2024 seeking to have Ms.

19     McCoy terminated as the "special personal representative" (which is a temporary "personal

20     representative" which is allowed for up to 180 days pursuant to state law) because, *inter alia,*

21     Ms. McCoy had committed crimes against Plaintiff Hunter that were threatening, harassing,

22     intimidating, and coercive. (Ms. McCoy was appointed *sua sponte* in May 2024.) Neither

23     motion was ruled upon.

a.  Among the various crimes reported to the Probate Court in 2024:

1.  Ms. McCoy smashed Plaintiff Hunter's security camera with a garden hoe in October 2024 (and later stated that she was not smashing it but trying to point it down because she was on Plaintiff Hunter's property, knew that Plaintiff Hunter was watching her, and did not want confrontation) (*see photos* in Exhibit 9),

2.  Ms. McCoy entered Plaintiff Hunter's home in September 2024, knowing that Plaintiff was inside, using keys that Plaintiff Hunter gave Ms. Auclair in 2022, and while inside, pretended that she did not know who Plaintiff Hunter was, threatened to call the cops on Plaintiff Hunter twice, and threatened to change the locks of Plaintiff Hunter's home. Ms. McCoy refused to leave, upon Plaintiff Hunter's repeated requests (at least ten such requests), for more than four minutes. The four-minute video recording is Exhibit 10 which is a CD.

Rosemary Saccomani, In Her Official Capacity, And Rosemary Saccomani, In Her Individual Capacity, Created False Public Documents That Indicate That Ms. Mccoy Is The "Personal Representative" And Has Been Non-Responsive To Plaintiff Hunter's Request To Correct This Error.

30. Both "Ms. Saccomani, Official", and "Ms. Saccomani, Individual" have incentive to issue the False Letters because they wan the Probate Court case to end. They are concerned about the Register office's budget and told Plaintiff Hunter in March 2025, that the Probate Court case HD22P2394 that relates to Ms. Calabrese is consuming too much of her staff resources and that Plaintiff Hunter should ask the Trial Court [Administrative Office] to give her more budget money. Plaintiff Hunter was sitting in "Ms. Saccomani, Official's" office when she said this. And the reason Plaintiff Hunter was sitting physically in "Ms. Saccomani

Official's" office is because two of "Ms. Saccomani, Official's" assistant clerk-magistrates

would not allow Plaintiff Hunter to file documents including, but not limited to, written

requests for corrections to the Probate Court record. Therefore, Plaintiff Hunter asked to meet

with "Ms. Saccomani, Official" in person. Plaintiff Hunter told "Ms. Saccomani, Official",

that Plaintiff Hunter had been entitled to a final judgment of dismissal, as a matter of law,

since April 2023; that Plaintiff Hunter filed five unopposed dispositive motions; that the

judge denied them all, and that the judge will not enter a final order. In other words, Plaintiff

Hunter is not to blame for the fact that a typical eight-month case has been ongoing for more

than two years. "Ms. Saccomani, Official", and "Ms. Saccomani, Individual" expressed a

deep level of frustration during this conversation during which she repeatedly made

disparaging comments such as "this case is so big, I can't open it on my computer"; "this

case is so big, it is crashing my computer"; "boy, this must be a big estate for you to go

through all this"; etc (all quotes are paraphrased but are pretty darn close to verbatim).  One

such issue Plaintiff Hunter raised during this conversation is the fact that Mr. Ornell had

falsified four documents (the focus for this complaint relates to only two of them) in Ms.

Calabrese's Probate Court file that relate to Plaintiff Hunter's request to not pay about $300

to the sheriff to issue witness subpoenas in preparation for the upcoming Probate Court trial

(cost waiver was based on Plaintiff Hunter's indigency). "Ms. Saccomani, Official", and

"Ms. Saccomani, Individual", stated that she would not correct these falsified documents

(upon Plaintiff Hunter's request) because she intentionally falsified them because she does

not agree with Mass. G.L. c 261, § 27C (indigency waiver law) and would not comply with

it. To avoid complying with this law, she (through Mr. Ornell's hand and signature)

intentionally and falsely entered written statements into the Probate Court record that declare

1    that Plaintiff Hunter's requests (to not pay about $300 for the sheriff's fee to serve witness

2    subpoenas) were facially defective. Upon making such a declaration, the state law allows

3    "Ms. Saccomani, Official" to be relieved of her obligation to comply with Mass. G.L. c 261,

4    § 27C (and allow Plaintiff Hunter's request) and requires that Plaintiff Hunter's related

5    request be transferred to a different branch of government (the judiciary) for resolution.

6    Plaintiff Hunter filed similar requests with "Ms. Saccomani, Official" to not pay filing fees in

7    January 2025. Both were approved administratively for a total of $750. The effect is that

8    "Ms. Saccomani, Official" approved a waiver of filing fees for $750 but would not approve a

9    request to not pay about $300 for witness subpoenas in preparation for an upcoming Probate

10    Court trial. Mass. G.L. c 261, § 27C authorizes "Ms. Saccomani, Official" to allow both

11    types of costs as "normal fees and costs". But both "Ms. Saccomani, Official" and "Ms.

12    Saccomani, Individual's" acts show willful violations of law to prejudice Plaintiff Hunter's

13    efforts to prepare for Probate Court trial (that was held on one day in March 2025).

14    **The Ohio Casualty Insurance Company, Liberty Mutual Holding Company, Inc., And Wells Fargo**
15    **Clearing Services, LLC Are Participants In The Fraud Scheme**
16
17    31. The Surety Bond issued by Ohio Ins. is a part of Ms. McCoy's fraud to deceive others to

18    believe that she is the "personal representative" so that she can defraud Plaintiff Hunter and

19    Ms. Calabrese. The Ohio Casualty Insurance Company ("Ohio Ins.") has a "statutory home

20    office" in New Hampshire and its main administrative office is in Massachusetts. It is an

21    affiliated insurance entity of Liberty Mutual Holding Co., Inc.    The Ohio Casualty

22    Insurance Company perpetuated and continues to perpetuate Ms. McCoy's fraud because it

23    issued the Surety Bond without first exercising a required duty of care and without regard for

24    the law that establishes that Probate Court Order 6/5/25 was automatically stayed and was

25    not enforceable at the time that it issued the Surety Bond on June 25, 2025.

     a.  This perpetuation of fraud involves, *inter alia,* "honest services fraud" whereby Ms. McCoy acted as a "personal representative", in exchange for a fee for services performed by Ms. McCoy, when Ms. McCoy had no such legal authority when she purchased the Surety Bond.

     b.  This perpetuation of fraud involves, *inter alia,* "conversion" whereby Ms. McCoy converted money that belongs to the late Ms. Calabrese, that is held in a bank account at Wells Fargo, to personal use – whereby Ms. McCoy fraudulently performed "personal representative" services to purchase the Surety Bond with Ms. Calabrese's funds so that she could use the Surety Bond to obtain "False Letters" from "Ms. Saccomani, Official" so that she can trick Wells Fargo and Liberty Mutual (and unknown others) to believe that she has legal authority to act as "personal representative" – which permitted and permits her to defraud the late Ms. Calabrese and to defraud Plaintiff Hunter of money and property.

Liberty Mutual Holding Co., Inc's Role In The Fraud And Breach Of Duty Of Care

32. Liberty Mutual Holding Co., Inc. ("Liberty Mutual Holding") is a holding company and one of its "member companies" uses the trade name Liberty Mutual Insurance Company ("Liberty Mutual") which insures Ms. Calabrese's house and car in Massachusetts. (House valued at about $111,000. Car valued at about $19,000.) Ms. McCoy is using Ms. Calabrese's insurance policies with Liberty Mutual as part of her fraud against Plaintiff Hunter and Ms. Calabrese. Ms. McCoy contacted Liberty Mutual on July 11, 2025, emailed it the "False Letters", and told it falsely that she was Ms. Calabrese's "personal representative". Liberty Mutual acted without regard for the law and without the required duty of care.

a.  In November 2022, Ms. Auclair contacted Liberty Mutual and falsely represented herself to be Ms. Calabrese's "personal representative". (Plaintiff Hunter has verified business records from Liberty Mutual as evidence of this.) Ms. Auclair tricked Liberty Mutual by submitting to it, by email, a copy of a letter from her lawyer and her Probate Court petition. Liberty Mutual accepted Ms. Auclair to be the "executor of the estate" and allowed Ms. Auclair to add her son and daughter-in-law as drivers covered by Ms. Calabrese's auto insurance policy and to make other changes. Liberty Mutual failed to exercise a minimum duty of care to verify that Ms. Auclair's submitted documents granted her no legal authority. Plaintiff Hunter was able to stop Ms. Auclair's continued fraud through communications directly with Liberty Mutual.

b.  In July 2025, Ms. McCoy emailed "False Letters" to Liberty Mutual and falsely represented herself to be Ms. Calabrese's "personal representative". And Liberty Mutual allowed Ms. McCoy to change Ms. Calabrese's insurance policies. Liberty Mutual failed to exercise a minimum duty of care to verify the existence of Probate Court Order 6/5/25 and of Plaintiff Hunter's two Notice of Appeals of Probate Court Order 6/5/25. Liberty Mutual failed to exercise a minimum duty of care to verify the fact that Probate Court Order 6/5/25 was not enforceable.  The "False Letters" are not publicly viewable on MassCourts.org. But Plaintiff Hunter's two Notice of Appeal are viewable on MassCourts.org. Plaintiff Hunter unsuccessfully attempted to stop Ms. McCoy's fraud by communicating directly with non-lawyer employees of Liberty Mutual. The fraud described herein is

1                   sophisticated and Plaintiff Hunter has no option to stop this fraud other than to file

2                   this Complaint.

3          c.  Liberty Mutual perpetuated and perpetuates Ms. McCoy's fraud by allowing Ms.

4               McCoy to make policy changes when she has no legal authority to do so. Ms.

5               McCoy is using Ms. Calabrese's Liberty Mutual insurance policies to perpetuate

6               her fraud – because if Liberty Mutual receives funds from Ms. McCoy to pay for

7               Ms. Calabrese's insurance policies, such activity will trigger Ms. McCoy

8               fraudulently providing "personal representative" services for a fee (for which Ms.

9               McCoy will convert Ms. Calabrese's assets to pay herself for such services).

10              Also, such fraudulent "personal representative" services will involve Ms. McCoy

11              needlessly disposing of and/or converting Ms. Calabrese's assets to pay insurance

12              premiums to Liberty Mutual that Plaintiff Hunter has been paying since Ms.

13              Calabrese died in July 2022 (except one homeowner insurance payment for 2024-

14              2025 which was paid by some unknown person who Plaintiff Hunter thinks was

15              Ms. McCoy).

16   33. Ms. McCoy's fraudulent "personal representative" actions also create unnecessary adverse

17       risk to Ms. Calabrese's house and car. At this moment, Plaintiff Hunter is a 50% heir to Ms.

18       Calabrese. Therefore, increasing the risk of damage or loss to Ms. Calabrese's house and car

19       puts Plaintiff Hunter's expected inheritance at greater risk.

20         a.  As one of many examples: on July 11, 2025, Ms. McCoy stole the key to Ms.

21              Calabrese's car from inside Plaintiff Hunter's residence. Ms. McCoy unlawfully

22              entered Plaintiff Hunter's residence on July 11, 2025, which is deeded to Ms.

23              Calabrese and is located at 545 Glendale Road, Hampden, Massachusetts. Ms.

1    McCoy knows that 545 Glendale Road, Hampden, Massachusetts is Plaintiff

2    Hunter's residence and that Plaintiff Hunter lives there alone. Ms. McCoy has no

3    legal authority to enter Plaintiff Hunter's residence. Even if Ms. McCoy was/is a

4    "personal representative", it is illegal for Ms. McCoy to enter Plaintiff Hunter's

5    residence without first asking permission and without first stating a valid reason

6    to enter. Plaintiff Hunter has explained this to Ms. McCoy in great detail, at least

7    ten or more times since September 2024 (*see e.g.* United States District Court

8    case 3:24-cv-30115 which refers to Ms. McCoy as AGENT 4; *see also* Exhibit 8

9    which is Massachusetts Land Court petition 24 MISC 000722 that was first filed

10    on December 23, 2024, which refers to Ms. McCoy as AGENT in ¶¶ 72 – 76 of

11    pages 21 – 24 of Exhibit 8 which are Bates pages 22 – 25 of Exhibit 8).

12       b. Ms. McCoy's theft of the key to Ms. Calabrese's car denies Plaintiff Hunter the

13    ability to perform required maintenance on the car or to move the car as needed.

14    Plaintiff Hunter has paid all the car insurance premiums to Liberty Mutual for Ms.

15    Calabrese's car since July 2022.  For example, if Plaintiff Hunter sees that a tree

16    limb might be a hazard to Ms. Calabrese's car, Plaintiff Hunter cannot move the

17    car. See attached photo of a perfectly healthy-looking tree limb that fell at Ms.

18    Calabrese's property in June 2025. (*see* Exhibit 11). It was pure luck that Plaintiff

19    Hunter had moved Ms. Calabrese's car from its usual parking spot where it would

20    have been crushed by this fallen tree limb. Plaintiff Hunter personally cut up and

21    disposed of this fallen tree limb which was about 18 inches wide at its largest part.

22    Since June 5, 2025: Ms. Mccoy Misrepresented Herself To Plaintiff Hunter As The "Personal
23    Representative" Of The Late Darlene Joyce Calabrese And Asserted This Fake Authority To
24    Justify Making Threats To Plaintiff Hunter To Have Plaintiff Hunter Arrested
25

1    34. On June 16, 2025, Plaintiff Hunter received an email (and subsequently a similar letter in the

2    mail in Massachusetts which was processed through Connecticut) from Ms. McCoy in which,

3    *inter alia,* Ms. McCoy misrepresented herself as the "Personal Representative" of the late

4    Ms. Calabrese and gave notice to Plaintiff Hunter that Ms. McCoy would have Plaintiff

5    Hunter arrested if Plaintiff Hunter entered the property at 545 Glendale Road, Hampden,

6    Massachusetts (*see* Exhibit 12 which is a "Trespass" notice that threatens Plaintiff Hunter

7    with future arrest pursuant state law if she "trespasses" upon 545 Glendale Road, Hampden,

8    Massachusetts).

9    35.  The law is well-established that, as of this moment, 545 Glendale Road, Hampden,

10    Massachusetts is owned 50% by Plaintiff Hunter (because, as of this moment, Plaintiff

11    Hunter is a 50% heir to the late Ms. Calabrese). The law is as follows:

12            "title to real property 'passes to heirs at law on death of an owner.' <u>Heavey</u>, 453
13            Mass. at 265 n.7. See <u>Russo v. Inzirillo</u>, 360 Mass. 862, 862 (1971) ("title to
14            realty of a deceased intestate vests immediately in the heirs and no distribution is
15            required. . .It does not pass to the administrator who is without power to convey
16            real estate except by special authorization and license of the Probate Court")";
17            Quoting from <u>Aleksov vs. Aleksov</u>, No. 20-P-760., Appeals Court of
18            Massachusetts, September 8, 2021.

19

20            See also Mass. G.L. c 190B, § 3-101 which states in relevant part:

21

22            "Upon the death of a person, the decedent's real and personal property
23            devolves....in the absence of testamentary disposition, to the decedent's heirs"

24

25            The "decedent" is Ms. Calabrese and the "heirs" are Plaintiff Hunter and Ms.
26            Auclair. As of this moment, the "testamentary disposition" is "intestate".

27

36. Even if Ms. McCoy is / was the "personal representative" of Ms. Calabrese; Ms. McCoy has no legal grounds to threaten to have Plaintiff Hunter arrested for entering her own property and such a threat is, *inter alia,* a Massachusetts Civil Rights violation (*see* Mass. G.L. c _12, §§ 11 I  and 11 J ).

Legal Support To Establish Ms. Mccoy's Fraud – To Show That Ms. Mccoy Has No Authority To Act As The "Personal Representative"

37. Ms. McCoy is not the "personal representative" of Ms. Calabrese; and Probate Court Order 6/5/25 was automatically stayed and is currently stayed.

    a.   Probate Court Order 6/5/25

        1.   is subject to appeal (*see e.g.* Mass. G.L. c 190B, § 3-412; *see also e.g.* Mass. G.L. c 215, § 22);

        2.   was automatically stayed for the first thirty days (until July 6, 2025; *see* Massachusetts Rule of Civil Procedure 62);

        3.   was timely appealed (*see* Exhibit 7); and

        4.   is stayed pending appeal (*see* Mass. G.L. c 215, § 22; *see also see also* Gale v. Nickerson, 144 Mass 416 at 418-419 which held "[a]s we have before said, the appeal from the decree of the judge of probate brings to this court the whole question of the validity and propriety of the decree...The whole question is tried here de novo."; *see also* Smith v. Smith, 175 Mass 483 at 175 which held, "While the appeal was pending, that is, from December 19, 1891, until February 7, 1893, a period of thirteen months and nineteen days, there was no executor of the will of John B. Smith who could be sued, and no person who if sued had the right to defend the suit in behalf of his estate. The effect of an appeal

1    from a decree of the Probate Court appointing an executor is to suspend

2    the authority of the person appointed to act as such. Pub. Sts. c. 156, §

3    12."; *see also* <u>Rooney v. Sletterink</u>, 4 Mass. App. Ct 124 at 127 (1876)

4    which held, "Thus, the stay occasioned by the appeal from the Probate

5    Court continued, and the defendant could not have been sued as executor

6    earlier than fifteen days after March 7, 1973.").

7    Some Of The State And Federal Laws Violated
8

9    38.  Even if one could argue (albeit incorrectly) that Ms. McCoy has caused no damages in the

10    past and/or that any such damages in the past are minimal; the Supreme Court of the United

11    States held in <u>Kousisis v. United States</u> (No. 23-909; decided May 22, 2025; 605 U.S. _____

12    (2025)); that intent to injure is not a required element of the crime of wire fraud and held

13    that "a scheme may still constitute wire fraud even if the defendant provides something of

14    value in return." (*see* ¶ (a)(1) of syllabus of <u>Kousisis v. United States</u> opinion; No. 23-909;

15    decided May 22, 2025; 605 U.S. _____ (2025)).

16    39.  Further, the bank fraud statute (18 U.S.C.§ 1344) applies to any dollar amount defrauded.

17    40.  Even if one could argue that Ms. McCoy made an honest mistake, and she truly thought that

18    she was / is the "personal representative" of Ms. Calabrese; such argument fails because

19          a.  It requires Ms. McCoy, an attorney, to plead ignorance of Massachusetts Rule of

20              Civil Procedure 62 and ignorance of Mass. G.L. c 215, § 22. In <u>Jerman v. Carlisle,</u>

21              <u>Mcnellie, Rini, Kramer & Ulrich LPA, et al</u>, the Supreme Court held that a

22              " 'bona fide error' defense in §1692k(c)" does not apply to mistakes of law. (*see*

23              <u>Jerman v. Carlisle, Mcnellie, Rini, Kramer & Ulrich LPA, et al</u>; 559 U.S. 573; *see*

24              *also* "It is a common maxim that 'ignorance of the law will not excuse any

person, either civilly or criminally.' <u>Barlow v. United States</u>, 7 Pet. 404, 411" (*see* ¶ (a) of the syllabus of <u>Jerman v. Carlisle</u>; *Id.*)

b. It requires Craig T. Ornell, an attorney, who works for "Ms. Saccomani, Official" to plead ignorance of Massachusetts Rule of Civil Procedure 62 and ignorance of Mass. G.L. c 215, § 22.

c. It requires all other named Defendants to assert ignorance of the laws and ignorance of their required duty of care to the late Ms. Calabrese and to Plaintiff Hunter.

d. Plaintiff Hunter sent a certified letter to Ms. McCoy on July 22, 2025, advising her that she is not the "personal representative" because, *inter alia,* Plaintiff Hunter filed notices of appeal on June 30, 2025, and July 3, 2025 (*see* Exhibit 7) and that she must cease all related activity.

e. Ms. McCoy told Plaintiff Hunter in person on August 1, 2025, that Plaintiff Hunter is "not correct" in her assertion that

    1.    Probate Court Order 6/5/25 is stayed and is not enforceable and

    2.    that Ms. McCoy is not the "personal representative" of Ms. Calabrese

But Ms. McCoy offered nothing more to dispute Plaintiff Hunter's assertions.

f. Plaintiff Hunter told Mr. Ornell on July 31, 2025, that he made an error issuing the "False Letters", explained why, and asked him to correct his error in issuing "False Letters"; and he did not agree to do so.

g. Plaintiff Hunter asked "Ms. Saccomani, Official" in writing on July 17, 2025, to correct Mr. Ornell's error in issuing False Letters, (*see* Exhibit 4) and she has been non-responsive.

h. Plaintiff Hunter went to Ms. Saccomani, Official's office on July 24, 2025, and asked a very nice employee named Dolly when "Ms. Saccomani, Official" would respond to Plaintiff Hutner's request that was efiled on July 17, 2025 (*see* Exhibit 5). Dolly stated that "Ms. Saccomani, Official" was out of the office and that she would be expected back on Wednesday (July 30, 2025). Plaintiff Hunter awaits a response by "Ms. Saccomani, Official" to her request to revoke the fraudulently-issued "False Letters".

41. In <u>Kousisis v. United States</u>, the court held that the element of wire fraud is as follows: the defendant "used the wires to execute a 'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.' " (*see* ¶ Section II on page 5 <u>Kousisis v. United States</u> opinion; No. 23-909, decided May 22, 2025; 605 U.S. _____ (2025)).

42. This is a list of some of the applicable laws violated as it relates to fraudulently causing the creation of fraudulent public and private documents to be used to perpetuate fraud, such as, but not limited to, fraudulently causing the issuance of the Surety Bond by Ohio Ins. and the fraudulent issuance of the "False Letters" by Mr. Ornell who works for "Ms. Saccomani, Official" to perpetuate the fraud of taking money and property from the late Ms. Calabrese and from Plaintiff Hunter – with the willing and knowing participation of the named Defendants and of non-party, Mr. Ornell and Marsh & McLennan Agency, LLC.

    a. 18 U.S.C. § 1346 (honest services fraud)

    b. 18 U.S.C. § 1343 (wire fraud)

    c. 18 U.S.C. § 1349 (conspiracy to commit wire fraud)

    d. 18 U.S.C. § 1962(b) (RICO)

    e. 18 U.S.C. § 1962(c) (RICO)

    f. 18 U.S.C. § 1962(d) (RICO)

g.  18 U.S.C. § 1952, (interstate travel to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity)

h.  42 U.S.C. § 1985(2) (conspiracy to interfere with civil rights; obstructing justice)

i.  42 U.S.C. § 1985(3) (conspiracy to interfere with civil rights; depriving persons of rights or privileges)

j.  Mass. G.L. c 12, §§ 11 I and 11 J (civil rights violations)

k.  Mass. G.L. c 186, § 14 (wrongful acts regarding quiet enjoyment of residence)

l.  Mass. G.L. c 258E, § 1 (harassment)

m.  Mass. G.L. c 266 § 18A: Entering dwelling house by false pretenses; intent to commit felony; larceny; punishment

n.  Mass. G.L. c 266 § 30: Larceny; general provisions and penalties

o.  Mass. G.L. c 266 § 34: Larceny; inducement to part with property

p.  Mass. G.L. c 266, § 127 (destruction of property)

q.  Mass. G.L. c 267, § 1 (false public documents)

r.  Mass. G.L. c 267, § 5 (uttering false public documents)

s.  Mass. G.L. c 268, § 13B(b ) (intimidating witness)

t.  Mass. G.L. c 268, § 13E (Tampering with record, document or other object for use in an official proceeding)

u.  Supreme Judicial Court Rule 3:12 (applies to "Ms. Saccomani, Official")

RICO Injury

43.  Plaintiff Hunter has suffered financially in defending against this interstate fraud scheme to take money and property from Plaintiff Hunter and from the assets of Ms. Calabrese. Among other things, Plaintiff suffered damages, i.e., loss of personal funds; loss of personal time since June 16, 2025, used to research and investigate this unlawful activity; damages for the fraudulent transfers and/or fraudulent conveyances; damage caused by waste and loss of money Plaintiff Hunter paid during the delay and interference; delay and loss in the use, enjoyment, benefits, profits, revenues, interest and interests; attorney fees

1    and costs resulting from the interference, including attorney fees and costs incurred in

2    setting aside the fraudulent actions; and all other damages, injuries, and harms caused by

3    the fraudulent actions and interference. Plaintiff Hunter is therefore entitled to recover

4    threefold the damages she sustained together with the cost of the suit, reasonable attorneys'

5    fees and reasonable experts' fees.

6    44.  Plaintiff Hunter has suffered financially in defending against this interstate scheme to take

7    money and property from Plaintiff Hunter and from the late Ms. Calabrese. This

8    sophisticated fraud involves material facts such as, but not limited to,

9      a.  Defendants acted in a pattern of racketeering since at least June 16, 2025, to

10      fraudulently and unlawfully take property and money from Ms. Calabrese and

11      Plaintiff Hunter.

12     b.  Pursuant to Massachusetts law, if Ms. Calabrese died without a Will, Plaintiff

13      Hunter has superior priority to Ms. McCoy to be Ms. Calabrese's "personal

14      representative" (because Plaintiff Hunter is Ms. Calabrese's daughter and Ms.

15      McCoy has no relation to Ms. Calabrese). And there exists zero evidence in the

16      Probate Court record that justifies appointing Ms. McCoy to be the "personal

17      representative" over Plaintiff Hunter.

18     c.  In December 2024, Ms. Auclair formally renounced, in writing, any perceived

19      right she might have had to be the "personal representative". Therefore, there is

20      no reason why Plaintiff Hunter has not been, was not, and is not formally

21      appointed to be the "personal representative".

22     d.  However, Ms. Calabrese had and has a Will. All Plaintiff Hunter's attempts to

23      seek and obtain admissible evidence regarding Ms. Calabrese's Will were

blocked. There is a reason why Ms. Auclair unplugged Ms. Calabrese's life

support equipment and ran to Ms. Calabrese's residence and emptied out Ms.

Calabrese's filing cabinet before telling Plaintiff Hunter that Ms. Calabrese died.

And that reason is this: Ms. Auclair knew and knows that Ms. Calabrese's Will

names Plaintiff Hunter to be the "executor", and Ms. Auclair opposed Ms.

Calabrese's wishes.

e.  Either way – if Ms. Calabrese died testate or intestate -- Plaintiff Hunter has

superior legal priority to be the "personal representative" of Ms. Calabrese.

f.   As such, Defendants' pattern of racketeering has forced Plaintiff Hunter to suffer

financially because Plaintiff Hunter has been deprived of compensation for

"personal representative" services – the same "personal representative" services

that Ms. McCoy has performed without legal authority.

g.  Plaintiff Hunter will continue to suffer financially.

h.  Plaintiff Hunter will suffer in the future as she attempts to undo the harm caused

by Defendants; including attorney fees and costs resulting from Defendants'

interference, including attorney fees and costs incurred in setting aside the

fraudulent actions; and all other damages, injuries, and harms caused by the

fraudulent actions and interference.

i.   Plaintiff Hunter is therefore entitled to recover threefold the damages she

sustained together with the cost of the suit, reasonable attorneys' fees and

reasonable experts' fees.

CLAIMS

FIRST RICO CLAIM FOR RELIEF – COUNT I
Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)
Against: All Named Defendants

45. Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

46. Defendants violated 18 U.S.C. § 1962(c) and Plaintiff was injured and will continue to be injured.

47. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §§ 1961(3).

48. Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the prior paragraphs, and as further described below.

49. The Enterprise. Defendants Ms. McCoy, Ohio Ins., Liberty Mutual Holding, Wells Fargo, "Ms. Saccomani, Official"; "Ms. Saccomani, Individual", together with employees, contractors, officers, and directors of Ms. McCoy, "Ms. Saccomani, Official's" office, Marsh & McLennan Agency, Inc., Liberty Mutual Holding, Ohio Ins., and Wells Fargo form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

50. Alternatively, Ms. McCoy, Ohio Ins., Liberty Mutual Holding, Wells Fargo, "Ms. Saccomani, Official", and "Ms. Saccomani, Individual" each constitute a separate enterprise

1   within the meaning of 18 U.S.C. § 1961(4).

2  51. Alternatively, Ms. McCoy, Ohio Ins., Liberty Mutual Holding, Wells Fargo, "Ms.

3      Saccomani, Official" and "Ms. Saccomani, Individual" together constitute an enterprise

4      within the meaning of 18 U.S.C. § 1961(4).

5  52. Each has engaged in, and their activities have affected, foreign commerce.

6  53. <u>Pattern of Racketeering Activity</u>. Defendants, each of whom are persons associated with, or

7      employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate

8      directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity

9      with the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c). The racketeering activity

10     was made possible by Defendants' regular and repeated use of the facilities and services of

11     the enterprise. Defendants had the specific intent to engage in the substantive RICO

12     violation alleged herein.

13  54. Predicate acts of racketeering activity are acts which are indictable under provisions of the

14     US Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged herein.

15     Defendants each committed at least two such acts or else aided and abetted such acts.

16  55. The acts of racketeering were not isolated, but rather the acts of Defendants were related in

17     that they had the same or similar purpose and result, participants, victims and method of

18     commission. Further, the acts of racketeering by Defendants have been continuous. There

19     was repeated conduct during a period of time beginning on June 5, 2025, and continuing to

20     the present, and there is a continued threat of repetition of such conduct.

21  56. The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not

22     limited to the predicate acts and extended beyond the racketeering activity. Rather, they

23     existed separate and apart from the pattern of racketeering activity for legitimate business

1    purposes offered to the general public. Defendants have had and do have, upon information

2    and belief, legitimate business plans outside of the pattern of racketeering activity.

3    57. Plaintiff Hunter specifically alleges that Defendants participated in the operation and

4    management of the association-in-fact enterprise and the alternative enterprises by

5    overseeing and coordinating the commission of multiple acts of racketeering as described

6    below.

7    58. Predicate Act: Use of Mails and Wires to Defraud, Bank Fraud, Honest Services Fraud,

8    Attempt To Commit Any Offense Of These Statutes, And Conspiracy to Commit Any

9    Offense Of These Statutes to Defraud Plaintiff Hunter and the late Ms. Calabrese in

10    Violation of 18 U.S.C. §§ 1341, 1343, 1344, 1346, and 1349 (frauds and swindles, wire

11    fraud, bank fraud, scheme or artifice to defraud (honest services fraud), attempt and

12    conspiracy; respectively). Defendants committed acts constituting indictable offenses under

13    18 U.S.C. §§ 1341, 1343, 1344, 1346, and 1349 in that they devised or intended to devise a

14    scheme or artifice to defraud Plaintiff Hunter and the late Ms. Calabrese or to obtain money

15    from Ms. Calabrese's bank account with Wells Fargo by false or fraudulent pretenses,

16    representations or promises – including taking money from Ms. Calabrese's bank account

17    with Wells Fargo to pay Ms. McCoy for fraudulent "personal representative" services.  For

18    the purpose of executing their scheme or artifice, Defendants caused delivery of various

19    documents and things by the U.S. mails or by private or commercial interstate carriers or

20    received such therefrom. Defendants also transmitted or caused to be transmitted by means

21    of wire communications in interstate or foreign commerce various writings, signs and

22    signals. The acts of Defendants set forth herein were done with knowledge that the use of

23    the mails or wires would follow in the ordinary course of business, or that such use could

1　　have been foreseen, even if not actually intended. These acts were done intentionally and

2　　knowingly with the specific intent to advance Defendant's scheme or artifice.

3　59.　Defendants carried out their scheme in different states and could not have done so unless

4　　they used the U.S. mails or private or commercial interstate carriers or interstate wires. In

5　　furtherance of their scheme alleged herein, Defendants Ms. McCoy, Ohio Ins., Liberty

6　　Mutual Holding, Wells Fargo, "Ms. Saccomani, Official"; "Ms. Saccomani, Individual",

7　　together with employees, contractors, officers, and directors of Ms. McCoy, "Ms.

8　　Saccomani, Official", Marsh & McLennan Agency, Inc., Liberty Mutual Holding, Ohio Ins.,

9　　and Wells Fargo communicated among themselves and with Plaintiff Hunter in furtherance

10　　of the scheme to defraud Plaintiff Hunter and the late Ms. Calabrese. These communications

11　　were typically transmitted by wire (i.e. electronically) and/or through the U.S. mails or

12　　private or commercial carriers. Defendants also transmitted or caused the Surety Bond, the

13　　False Letters, and money from Ms. Calabrese's bank account held at Wells Fargo to be

14　　transmitted by mail or wire -- and upon information and belief -- related communications

15　　with unknown employees, officers and/or directors of Ms. McCoy, Ohio Ins., Liberty

16　　Mutual Holding, Wells Fargo, and "Ms. Saccomani, Official" since about June 5, 2025.

17　60.　Specifically, Defendants Ms. McCoy, Ohio Ins., Liberty Mutual Holding, Wells Fargo, "Ms.

18　　Saccomani, Official"; and "Ms. Saccomani, Individual"; used wire and/or U.S. mail or

19　　private or commercial carriers to transmit and receive Probate Court Order 6/5/25, the

20　　fraudulently-obtained Surety Bond, the "False Letters", and/or money from the late Ms.

21　　Calabrese's bank account with Wells Fargo for the purpose of continuing their fraudulent

22　　scheme.   Wells Fargo is domiciled in Missouri, Ohio Ins. is domiciled in New Hampshire

23　　(and received Ms. McCoy's surety bond application from a Pennsylvania agency domiciled

in Delaware that was executed by an employee located in Washington); Liberty Mutual Holding, Ms. McCoy and "Ms. Saccomani, Official" are domiciled in Massachusetts.  "Ms. Saccomani, Official" published the fact that she issued "False Letters" on the internet at MassCourts.org.  Ms. McCoy performed fraudulent "personal representative" services and transmitted money from Ms. Calabrese's bank account with Wells Fargo to herself for compensation for such fraudulent services.

61. <u>Predicate Act: Transport and Receipt of Stolen Money in Violation of 18 U.S.C. §§ 2314 and 2315</u>. Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ 2314 in that they devised or intended to devise a scheme or artifice to defraud Plaintiff Hunter, Ms. Calabrese, and the assets of Ms. Calabrese and/or to obtain money from Ms. Calabrese's bank account at Wells Fargo by means of false or fraudulent pretenses, representations or promises. Defendants transported or caused to be transported in interstate of foreign commerce money having a value of $5000 or more, which was stolen, converted or taken by fraud. Defendants also committed acts which constitute indictable offenses under 18 U.S.C. § 2315 in that they received money in excess of $5000, which crossed a state boundary after being stolen, unlawfully converted or taken. The acts of Defendants set forth above were done willfully and with knowledge that the money was stolen, converted or taken by fraud from Ms. Calabrese's assets (and therefore from Plaintiff Hunter who is 50% heir to Ms. Calabrese). These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

62. <u>Predicate Act: Travel in Furtherance of Scheme to Defraud in Violation of 18 U.S.C. § 1952</u>. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1952 in that they devised or intended to devise a scheme or artifice to defraud Plaintiff Hunter, Ms.

1    Calabrese, and the assets of Ms. Calabrese or to obtain money from Ms. Calabrese's bank

2    account at Wells Fargo by means of false or fraudulent pretenses, representations or

3    promises. Defendants then traveled in foreign commerce and used facilities of foreign

4    commerce in order to promote, manage and facilitate the continuation of their scheme.

5    63. These acts were done intentionally and knowingly with the specific intent to advance

6    Defendants' scheme or artifice.

7    64. Defendants' shared objective was and is to divert funds to their own benefit.

8    65. Plaintiff Hunter, the late Ms. Calabrese, and the assets of the late Ms. Calabrese have been

9    damaged as a direct and proximate result of Defendants' travel in foreign commerce for

10    purposes of promoting, managing and facilitating the continuation of their scheme.

11    66. Continuity of Conduct: Defendants' violation of state and federal law as set forth herein,

12    each of which directly and proximately injured Plaintiff Hunter, the late Ms. Calabrese, and

13    the assets of the late Ms. Calabrese constituted a continuous course of conduct spanning a

14    period of about two months, which was intended to obtain money through false

15    representations, fraud, deceit, and other improper and unlawful means. Therefore, said

16    violations were a part of a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and

17    (5).

18    67. Upon information and belief, Defendants have conducted and/or participated, directly and/or

19    indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of

20    racketeering activity as defined herein in violation of 18 U.S.C. § 1962(c).

21    68. The unlawful actions of Defendants, and each of them, have directly, illegally, and

22    proximately caused and continue to cause injuries to Plaintiff Hunter in her business and

23    property. Plaintiff seeks an award of damages in compensation for, among other things, the

1    money Defendants transferred, converted, and/or conveyed from Ms. Calabrese's bank

2    account at Wells Fargo and consequently from Plaintiff Hunter who is currently a 50% heir

3    to Ms. Calabrese.

4    69. Plaintiff Hunter accordingly seeks an award of three times the damages she sustained, and

5    the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as

6    any other relief as authorized by statute.

7    70. Defendants' conduct constitutes a "pattern" of racketeering activity under 18 U.S.C. §

8    1961(5) because their activities include at least two acts of racketeering activities in the past

9    10 years, including, but not limited to, the following acts:

10        a.  Ms. McCoy fraudulently acted as the "personal representative" of Ms. Calabrese

11            to purchase the Surety Bond and to deliver it to "Ms. Saccomani, Official". Ms.

12            McCoy used her fraudulent "personal representative" authority to send money

13            from Ms. Calabrese's bank account with Wells Fargo in Missouri to an insurance

14            agency in Pennsylvania to purchase the Surety Bond that was issued by a New

15            Hampshire insurance company – that Ms. McCoy gave by hand to Mr. Ornell in

16            Massachusetts who works for "Ms. Saccomani, Official".

17        b.  Ms. McCoy fraudulently obtained "False Letters" from Mr. Ornell and transmitted

18            it to others and falsely presented herself to be the "personal representative" of Ms.

19            Calabrese.

20        c.  Defendants Ms. McCoy, "Ms. Saccomani, Official", Ohio Ins., Liberty Mutual

21            Holding, and Wells Fargo participated in and/or perpetuated fraud;  and/or

22            breached a required duty of care when, *inter alia,* they did not acknoweldge that

23            Probate Court Order 6/5/25 was automatically stayed until July 6, 2025, and that

1          such stay was extended by Plaintiff Hunter's Notice of Appeal filed on June 30,

2          2025, and again on July 3, 2025.

3   71. All named Defendants agreed to and did conduct and participate in the conduct of the

4      enterprise's affairs through a pattern of racketeering activity for the unlawful purpose of

5      intentionally defrauding Plaintiff Hunter, the late Ms. Calabrese, and the assets of the late

6      Ms. Calabrese. Defendants' shared objective was and is to divert funds from Ms. Calabrese's

7      bank account to their own benefit, to convey and/or convert funds from Ms. Calabrese's bank

8      account.

9   72. Defendants' racketeering acts consisted of, but are not limited to, multiple acts of wire fraud

10      and honest services fraud, including, but not limited to, submitting fraudulent documents

11      through interstate commerce. Defendants' acts were committed for the unlawful purpose of

12      intentionally defrauding Plaintiff Hunter and defrauding the late Ms. Calabrese and

13      furthering the interests of the enterprise. As explained in detail herein, these named

14      Defendants coordinated their activities, shared critical information and documents that

15      support the enterprise, and acted in concert to further the interests of the enterprise.

16   73. All of the acts of racketeering described herein were related so as to establish a pattern of

17      racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common

18      purpose was to further the interests of the herein-described fraud scheme and fraud schemes,

19      to defraud Plaintiff Hunter of money and of property, to defraud the late Ms. Calabrese of

20      money and property, and to defraud the assets of the late Ms. Calabrese of money and

21      property.

22   74. All of the acts of racketeering described herein were related so as to establish a pattern of

23      racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common

1      purpose was to further the interests of "Ms. Saccomani, Official" and "Ms. Saccomani,

2      Individual" who stated in March 2025 that Ms. Calabrese's Probate Court case is consuming

3      too much of her staff resources. "Ms. Saccomani, Official" has therefore aided and abetted

4      Ms. McCoy's fraud since June 2025. "Ms. Saccomani, Official" knows that the Probate

5      Court case is stayed for all the reasons stated herein and that Ms. McCoy is not the "personal

6      representative". If Ms. McCoy's fraud is not stopped, none of Ms. Calabrese's assets will

7      remain by the time Plaintiff Hunter's appeal is adjudicated.

8   75. All of the acts of racketeering described herein were related so as to establish a pattern of

9      racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common

10     purpose was to defraud Plaintiff Hunter and the late Ms. Calabrese of money and property,

11     and to fraudulently use the assets of the late Ms. Calabrese of money and property to further

12     the fraud.

13  76. The Defendants and actors named herein, through their employees, contractors, members, or

14     agents, directly or indirectly, participated in the acts and employed the same or similar

15     methods of commission. Plaintiff Hunter, the late Ms. Calabrese, and the assets of the late

16     Ms. Calabrese were and are the victims of the acts of racketeering; and/or the acts of

17     racketeering were otherwise interrelated by distinguishing characteristics and were not

18     isolated events.

19  77. The Defendants and actors named herein have not suspended their acts of racketeering

20     against Plaintiff Hunter, against the late Ms. Calabrese, and against the assets of the late Ms.

21     Calabrese.

22  78. As a direct and proximate result of, and by reason of, the activities of the Defendants and

23     actors named herein and their conduct in violation of 18 U.S.C. §1962(c); the late Ms.

1    Calabrese and Plaintiff Hunter were injured in her business or property, within the meaning

2    of 18 U.S.C. §1964(c). Among other things, Plaintiff Hunter suffered damages and injury to

3    her property; damages from delay and loss in the use, enjoyment, benefits, profits, revenues,

4    interest and interests and delay and loss of opportunity resulting from the delay and

5    interference; damages in the form of attorney fees and costs resulting from the interference,

6    and costs incurred in addressing the fraudulent conduct in litigation; and all other damages,

7    injuries, and harms caused by the fraudulent interference. Plaintiff Hunter is, therefore,

8    entitled to recover threefold the damages he sustained together with the cost of the suit,

9    reasonable attorneys' fees and reasonable experts' fees.

10   79. WHEREFORE Plaintiff Hunter demands judgment against all named Defendants for the

11   following:

12         a.  All actual damages suffered as a result of this fraudulent scheme, in an amount no

13            less than $75,000.

14         b.  Costs and attorneys' fees Plaintiff Hunter has incurred trying to defend against

15            this fraud.

16         c.  Treble damages pursuant to 18 U.S.C. § 1964(c).

17         d.  Attorney fees and costs pursuant to 18 U.S.C. § 1964(c).

18         e.  Pre-and post-judgment interest;

19         f.  And such other and further relief as this Court may deem just and proper.

20   SECOND RICO CLAIM FOR RELIEF – COUNT II
21
22   Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d)
23                       Against: All Named Defendants
24

80. Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

81. As alleged in Count I, one or more of the following individuals violated 18 U.S.C. § 1962(c): Ms. McCoy, Ohio Ins., Liberty Mutual Holding, Wells Fargo, "Ms. Saccomani, Official"; and "Ms. Saccomani, Individual". Any person(s) who has violated 18 U.S.C. § 1962(c) is hereafter referred to as the "Operator / Manager" for the remainder of this Count.

82. Ms. McCoy, Ohio Ins., Liberty Mutual Holding, Wells Fargo, "Ms. Saccomani, Official"; and "Ms. Saccomani, Individual", conspired with the Operator(s)/Manager(s) to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises, defined *supra*, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d) since June 5, 2025.

83. The conspiracy's purpose was to take money and property from the late Ms. Calabrese and from Plaintiff Hunter. "Ms. Saccomani, Official's" purpose was to help create and perpetuate this fraud to stop the Probate Court case HD22P2394 in Hampden County Probate and Family Court because it is consuming too much of her staff resources.

84. Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included,

85. Even if some of the Defendants did not agree to harm Plaintiff Hunter, the late Ms. Calabrese, or the assets of the late Ms. Calabrese specifically; the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiff Hunter was a reasonably foreseeable consequence of Defendants' actions.

86. The named Defendants intended to or agreed to further an endeavor of the Operator(s)/Manager(s) which, if completed, would satisfy all of the elements of a

1    substantive RICO criminal offense (18 U.S.C. § 1962(c)) and adopted the goal of furthering

2    or facilitating the criminal endeavor. Their conduct includes, but is not limited to:

3        a.    Mr. Ornell knew that Ms. McCoy was not the "personal representative" and knew

4              that Ms. McCoy's Surety Bond was fraudulently-obtained — because:

5              1.    Ms. McCoy was not the "personal representative" but lied to Ohio Ins.

6                    (through Marsh & McLennan Agency, LLC), and falsely represented

7                    herself to be the "personal representative";

8              2.    Ohio Ins. issued the Surety Bond on the lie that Ms. McCoy was the

9                    "personal representative" – and Ohio Ins. should have known that Ms.

10                   McCoy was not the "personal representative" – and could have easily

11                   verified that Probate Court Order 6/5/25 was stayed and not enforceable

12                   until July 6, 2025.

13             But Mr. Ornell knowingly accepted and approved the Surety Bond that he

14             received from Ms. McCoy and issued "False Letters" which falsely asserts that

15             Ms. McCoy is the "personal representative".

16       b.    The existence of the "False Letters" are published in the Probate Court public

17             record at MassCourts.org.

18       c.    The "False Letters" were uttered to Ms. McCoy from Mr. Ornell who works for

19             "Ms. Saccomani, Official".

20       d.    Ms. McCoy uttered the fraudulently-obtained "False Letters" to Liberty Mutual

21             Holding and Wells Fargo.

1        e.  Neither Ms. McCoy, Mr. Ornell, "Ms. Saccomani, Official"; nor "Ms. Saccomani,

2            Individual" have revoked the "False Letters" or caused the "False Letters" to be

3            revoked despite Plaintiff Hunter's requests.

4        f.  Ms. McCoy continues to assert that she is the "personal representative".

5    87. Plaintiff Hunter was injured by Defendants' overt acts that are acts of racketeering or

6        otherwise unlawful under the RICO statute, which included (among other acts) acts of wire

7        fraud, bank fraud, and honest services fraud, committed through the enterprises alleged in

8        Count I.

9    88. As a direct and proximate result of, and by reason of, the activities of Defendants and their

10        conduct in violation of 18 U.S.C. §1962(d), Plaintiff Hunter was injured in her business or

11        property, within the meaning of 18 U.S.C. §1964(c). Among other things, Plaintiff Hunter

12        suffered damages and injury to her property; damages from delay and loss in the use,

13        enjoyment, benefits, profits, revenues, interest and interests and delay and loss of opportunity

14        resulting from the delay and interference; damages in the form of attorney fees and costs

15        resulting from the interference, and costs incurred in addressing the fraudulent conduct in

16        litigation; and all other damages, injuries, and harms caused by the fraudulent interference.

17        Plaintiff Hunter is, therefore, entitled to recover threefold the damages she sustained together

18        with the cost of the suit, reasonable attorneys' fees and reasonable experts' fees.

19    PRAYER FOR RICO RELIEF

20
21    89.    WHEREFORE, Plaintiff Hunter demands judgment against the named Defendants for the

22        following:

23        a.  All actual damages suffered as a result of this fraudulent scheme, in an amount no less

24            than $75,000.

b.  Costs and attorneys' fees Plaintiff Hunter has incurred trying to defend against this fraud.

c.  Treble damages pursuant to 18 U.S.C. § 1964(c).

d.  Attorney fees and costs pursuant to 18 U.S.C. § 1964(c).

e.  Pre-and post-judgment interest;

f.  And such other and further relief as this Court may deem just and proper.

### B.    THIRD CLAIM (Fraud) - COUNT III

### Against: All Named Defendants

89. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

90. Defendants knowingly and intentionally worked together to help create fraudulent private documents and fraudulent public documents to be used to mislead others to give Ms. McCoy control over Ms. Calabrese's assets and Plaintiff Hunter's interest in Ms. Calabrese's assets so that Ms. McCoy could use these assets to pay to obtain fraudulent documents to be used to convert these assets for personal use.

91. Defendants' conduct was willful, wanton, malicious, and oppressive. Defendants' unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiff Hunter in her business or property. This injury includes Plaintiff Hunter exerting excessive time and costs to defend this unlawful conduct and conversion of Ms. Calabrese's assets and Plaintiff Hunter's interest in Ms. Calabrese's assets to create, promote, and perpetuate this fraud.

92. Accordingly, Plaintiff Hunter seeks an award of damages in compensation for, among other things, the thousands of hours of time that Defendants stole from Plaintiff Hunter, the total

1    dollar amount of the assets owned by the late Ms. Calabrese that were stolen, and the total

2    damages to undo the damage caused and/or to repair the damage done. Further, Plaintiff Hunter

3    seeks the imposition of punitive damages sufficient to deter Defendants from committing such

4    unlawful conduct in the future.

5
6        C.    FOURTH CLAIM (Civil Conspiracy to Defraud) - COUNT IV

7                    Against: All Named Defendants
8
9    96. Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if

10       fully set forth herein.

11   97. Defendants, and each of them, combined and agreed with each other and/or others to defraud

12       Plaintiff Hunter, the late Ms. Calabrese, and the assets of the late Ms. Calabrese.

13   98. The conspiracy commenced after June 5, 2025.

14   99. Defendants together, and each of them, acted in concert to support their common purpose of

15       defrauding Plaintiff Hunter and the late Ms. Calabrese of Ms. Calabrese's assets and Plaintiff

16       Hunter of her expected inheritance.

17   100.   Each Defendant committed at least one overt act in furtherance of such conspiracy.

18   101.   Each Defendant acted with the common intent to defraud Plaintiff Hunter and understood

19       that all other Defendants shared in that common purpose.

20   102.   Defendants' conduct was willful, wanton, malicious, and oppressive. Defendants' unlawful

21       conspiracy has directly, legally, and proximately caused and continues to cause injuries to

22       Plaintiff Hunter and the late Ms. Calabrese -- in business and/or property. The injuries include,

23       but are not limited to, Plaintiff Hunter exerting excessive time to defend against the unlawful

24       acts and conversion of Ms. Calabrese's assets to personal use, personal gain, and/or personal

25       profit.

103.    Plaintiff Hunter seeks an award of damages for, among other things, the thousands of hours of time and the not-yet-determined amount of money that Defendants stole from the late Ms. Calabrese's assets and from Plaintiff Hunter's expected inheritance, which occurred as a result of Defendants' conduct.

104.    Further, Plaintiff seeks the imposition of punitive damages sufficient to deter Defendants from committing such unlawful conduct in the future.

PRAYER FOR RELIEF REGARDING FRAUD AND CIVIL CONSPIRACY TO DEFRAUD

WHEREFORE, Plaintiff Hunter respectfully requests that the Court:

    a.  Award compensatory, consequential, exemplary and punitive damages to Plaintiff Hunter in an amount to be determined at trial;

    b.  Award attorneys' fees and costs to Plaintiff Hunter; and

    c.  Grant to Plaintiff Hunter whatever other relief is just and proper.

## D.    BREACH OF DUTY OF CARE – COUNT V
### Against: All Named Defendants

90. Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

91. All Defendants have a duty of care to Plaintiff Hunter, to the late Ms. Calabrese, and to the assets of the late Ms. Calabrese.

92. MS. MCCOY: Ms. McCoy, acting wrongfully and without legal authority as the "personal representative" of Ms. Calabrese, nonetheless had and has a duty of care to Plaintiff Hunter as a fiduciary.

    a.  Mass. G.L. c 190B, § 3-709 states:

"(b) Whoever injuriously intermeddles with any personal property of a deceased person, without being thereto authorized by law, shall be liable as a personal representative in his own wrong to the person aggrieved.

(c) A personal representative in his own wrong shall be liable to the rightful personal representative for the full value of the personal property of the deceased taken by him and for all damages caused to the estate by his acts; and he or she shall not be allowed to retain or deduct any part of such estate, except for funeral expenses or debts of the deceased or other charges actually paid by him and which the rightful personal representative might have been compelled to pay."

b.  Ms. McCoy breached her wrongfully-taken fiduciary duty of care.

c.  Ms. McCoy used her wrongfully-taken fiduciary role to:

1.  wrongfully deny Plaintiff Hunter use of assets that belong to the late Ms. Calabrese,

2.  to steal assets that belong to the late Ms. Calabrese,

3.  to take assets that belong to the late Ms. Calabrese,

4.  to use assets that belong to the late Ms. Calabrese,

5.  to transfer assets that belong to the late Ms. Calabrese, and/or

6.  to convert assets that belong to the late Ms. Calabrese.

d.  Plaintiff Hunter is a 50% heir to Ms. Calabrese. Therefore, Ms. McCoy owed and owes a duty of care to Plaintiff Hunter – notwithstanding the fact that Ms. McCoy wrongfully-took fiduciary role over Ms. Calabrese's assets.

e.  Ms. McCoy's actions against the assets of Ms. Calabrese are actions against Plaintiff Hunter.

f.  Ms. McCoy's actions damaged Plaintiff Hunter as described herein.

g.  Ms. McCoy's actions damaged the assets of Ms. Calabrese.

93.  OHIO INS:

1          a.  Plaintiff Hunter incorporates by reference all the preceding paragraphs of this

2              Complaint as if fully set forth herein.

3          b.  The Ohio Casualty Insurance Company had and has a duty of care to verify

4              fundamental facts and relevant law regarding the Probate Court Order 6/5/25

5              before it issued the Surety Bond that was intended to give Ms. McCoy legal

6              authority which Ms. McCoy could use to wrongfully take control of Ms.

7              Calabrese's assets.

8    94.  LIBERTY MUTUAL HOLDING:

9          a.  Plaintiff Hunter incorporates by reference all the preceding paragraphs of this

10           Complaint as if fully set forth herein.

11         b.  Liberty Mutual Holding had and has a duty of care to verify fundamental facts

12           and relevant law when receiving "False Letters" from Ms. McCoy that are dated

13           less than 30 days after the Probate Court Order 6/5/25.

14    95.  WELLS FARGO:

15          a.  Plaintiff Hunter incorporates by reference all the preceding paragraphs of this

16           Complaint as if fully set forth herein.

17         b.  Wells Fargo had and has a duty of care to verify fundamental facts and relevant

18           law when receiving "False Letters" from Ms. McCoy that are dated less than 30

19           days after the Probate Court Order 6/5/25.

20    96.  MS. SACCOMANI, OFFICIAL:

21          a.  Plaintiff Hunter incorporates by reference all the preceding paragraphs of this

22           Complaint as if fully set forth herein.

23         b.  Ms. Saccomani, Official had and has a duty of care to

1.    comply with the relevant laws;

2.    avoid violations of relevant laws;

3.    create only correct documents;

4.    attest that a document is accurate/correct/valid only if it is accurate/correct/valid;  and

5.    prevent and avoid the creation and publication of "False Letters".

c.  Ms. Saccomani, Official had and has a duty of care to promptly revoke incorrect documents that she created and to publicly publish such correction (i.e. to publicly publish notice that the "False Letters" are revoked and were issued in error).

97.  MS. SACCOMANI, INDIVIDUAL:

a.  Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

b.  Ms. Saccomani, Individual had and has a duty of care to use her trusted position as Register of Hampden County Probate and Family Court:

1.    only in compliance with the relevant laws;

2.    only to create only correct documents;

3.    only to affix her official signature to attest that a document is accurate/correct/valid when it is accurate/correct/valid;

4.    only to maintain the integrity of public documents; and

5.    only to avoid creating and publishing "False Letters".

COUNT V

98.  Defendants breached their duty of care as described herein.

BREACH OF DUTY OF CARE – COUNT V – PRAYER FOR RELIEF

1  99. WHEREFORE, Plaintiff Hunter requests that the Court:

2          a.  Enter judgment against Defendants;

3          b.  Enter a permanent injunction to prevent future joint and several violations of

4              Defendants' Duty of Care;

5          c.  Award such relief as the Court finds necessary to redress injury to Plaintiff

6              Hunter, to the late Ms. Calabrese, and to the assets of the late Ms. Calabrese

7              including but not limited to, restitution, and the disgorgement of ill-gotten

8              monies;

9          d.  Award compensatory damages for the harm caused by Defendants' actions and

10             inactions;

11         e.  Award pre-judgment interest on the damages awarded;

12         f.  Award costs and reasonable attorney's fees incurred in prosecuting this action;

13         g.  Award such other and further relief as the Court deems just and equitable.

14
15                      E.      TRESPASS TO CHATTELS – COUNT VI
16                              Against: Susan A. McCoy
17
18  100. Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if

19       fully set forth herein.

20  101.  Ms. McCoy removed the key to Ms. Calabrese's car from Plaintiff Hunter's residence on

21       July 11, 2025.

22  102.  Plaintiff Hunter is entitled to possession of the key to Ms. Calabrese's car because, *inter*

23       *alia,*

24         a.  as of this moment, Plaintiff Hunter is a 50% heir to Ms. Calabrese and is a 50% heir

25             to Ms. Calabrese's car, and

1    b. Plaintiff Hunter has been in possession of Ms. Calabrese's car since July 2022, and

2        has paid all insurance premiums and taxes and has performed all maintenance,

3        service, and care of Ms. Calabrese's car since July 2022.

4    103. As a result of Ms. McCoy's Trespass to Chattels; Plaintiff Hunter, the late Ms. Calabrese, and

5        the asset of Ms. Calabrese have been damaged financially and put at unnecessary risk of

6        damage, loss, and hazard.

7    104. Plaintiff Hunter is entitled to possession of the key to Ms. Calabrese's car or its equivalent

8        replacement value.

9                                    COUNT VI

10   105. Ms. McCoy committed trespass to chattels as described herein.

11            TRESPASS TO CHATTELS – COUNT VI – PRAYER FOR RELIEF
12
13   106. WHEREFORE, Plaintiff Hunter requests that the Court:

14       a. Enter judgment against Ms. McCoy for this Count VI;

15       b. Enter a permanent injunction to prevent future violations of Trespass to Chattels

16           by Ms. McCoy and her agents;

17       c. Award such relief as the Court finds necessary to redress injury to Plaintiff Hunter

18           resulting from Ms. McCoy's Trespass to Chattels including but not limited to,

19           restitution, and the disgorgement of ill-gotten monies;

20       d. Award compensatory damages for the harm caused to the by Ms. Auclair's

21           actions;

22       e. Award pre-judgment interest on the damages awarded;

23       f. Award costs and reasonable attorney's fees incurred in prosecuting this action;

24       g. Award such other and further relief as the Court deems just and equitable.

F.    <u>CONVERSION – COUNT VII</u>

Against: All Named Defendants

107. Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

108. All named Defendants participated by sending, receiving, invoicing, and/or billing for services to perpetuate this fraud and such activity directly used (and will continue to use) the late Ms. Calabrese's money, held in an account with Wells Fargo, for such things as:

     a.   to purchase the Surety Bond,

     b.   to obtain "False Letters",

     c.   to compensate for fraudulent "personal representative" services,

     d.   to change Ms. Calabrese's insurance policies for the purpose of paying insurance premiums to Liberty Mutual Holding, and

     e.   other unknown things.

109. Ohio Ins. received $1350 of the late Ms. Calabrese's money from Wells Fargo to purchase the Surety Bond.

110. Liberty Mutual Holding billed Ms. McCoy on July 11, 2025, about $1197 for the insurance premium for the late Ms. Calabrese's homeowner insurance.

111. But Ms. McCoy never was the "personal representative"; and the Surety Bond was fraudulently obtained. The "False Letters" were fraudulently obtained.

112. Ms. McCoy converted the late Ms. Calabrese's money to compensate herself for fraudulent "personal representative" services.

113. Upon information and belief, Ms. McCoy converted the late Ms. Calabrese's money to pay others to perform at her direction as the "personal representative". For example, Ms. McCoy

1    stated on August 1, 2025, to Plaintiff Hunter, that on July 23, 2025, she sent her "security

2    guy" to perform services for her as the fraudulent "personal representative". Ms. McCoy

3    also stated in a letter that she emailed and mailed to Plaintiff Hunter, that is dated July 15,

4    2025, that she performed services on July 11, 2025, as the "personal representative".

5    114. Ms. McCoy has been non-responsive to Plaintiff Hunter's written and oral requests that she

6    cease her fraudulent "personal representative" acts.

7    115.  Plaintiff Hunter, individually as an heir to Ms. Calabrese, and as the person who was

8    appointed and selected by the late Ms. Calabrese to be her executor in her Will, is entitled to

9    reimbursement of the money that Ms. McCoy has spent while fraudulently acting as

10    "personal representative" or its equivalent value.

11    116. As a result of Ms. McCoy's conversion and the Defendants' participation in such

12    conversion; Plaintiff Hunter, the late Ms. Calabrese, and the assets of the late Ms. Calabrese

13    have been damaged financially.

14                                   COUNT VII

15

16    117. Defendants converted money and property that belong to the late Ms. Calabrese.

17                    CONVERSION – COUNT VII – PRAYER FOR RELIEF

18

19    118. WHEREFORE, Plaintiff Hunter requests that the Court:

20              a.  Enter judgment against Defendants for this Count VII;

21              b.  Enter a permanent injunction to prevent future violations of conversion by

22                  Defendants;

c.  Award such relief as the Court finds necessary to redress injury to Plaintiff Hunter resulting from Defendants' conversion including but not limited to, restitution, and the disgorgement of ill-gotten monies;

d.  Award compensatory damages for the harm caused to the by the Defendants' actions;

e.  Award pre-judgment interest on the damages awarded;

f.  Award costs and reasonable attorney's fees incurred in prosecuting this action;

g.  Award such other and further relief as the Court deems just and equitable.

G.    VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT ("MCPA") WHICH IS MASS. G.L. C 93A, § 2(a) – COUNT VIII

Against:  Ms. McCoy and Ms. Saccomani, Official

119.  Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

120.  Mass. G.L. c 93, § 2(a) states that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

COUNT VIII

121.  Ms. McCoy and "Ms. Saccomani, Official" violated Mass. G.L. c 93A, § 2(a).

PRAYER FOR RELIEF – MCPA

122.  WHEREFORE, Plaintiff Hunter requests that the Court:

a.  Enter judgment against Ms. McCoy and "Ms. Saccomani, Official" for each law violation alleged in this Count VIII;

b. Enter a permanent injunction to prevent future violations of the MCPA by Ms. McCoy and "Ms. Saccomani, Official";

c. Award such relief as the Court finds necessary to redress injury to Plaintiff Hunter resulting from Ms. McCoy and "Ms. Saccomani, Official's" violations of the MCPA including but not limited to, restitution, and the disgorgement of ill-gotten monies;

d. Award Plaintiff Hunter monetary civil penalties for each violation of the MCPA occurring within five (5) years preceding the filing of this Complaint; and

e. Award Plaintiff Hunter triple damages, costs and attorney's fees pursuant to Mass. G. L. c 93A, § 11, as well as such other and additional relief as the Court may determine to be just and proper.

## H.  INTENTIONAL INTERFERENCE WITH AN EXPECTANCY – COUNT IX

Against: All Named Defendants

123. Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

124. Plaintiff Hunter has suffered and continues to suffer economic harm because of Defendants' extreme and outrageous conduct.

125. Defendants intentionally or recklessly engaged in dishonest acts, involving commerce and interstate transmissions, and conspired with others with conscious disregard or indifference to the harm Defendants inflicted upon Plaintiff Hunter.

126. Defendants' conduct proximately caused Plaintiff Hunter's economic harm.

## COUNT IX

127. Defendants have intentionally interfered with Plaintiff Hunter's expectancy.

### PRAYER FOR RELIEF – INTENTIONAL INTERFERENCE WITH AN EXPECTANCY

124.  WHEREFORE, Plaintiff Hunter requests that the Court:

    a.   Enter judgment against Defendants and in favor of Plaintiff Hunter for each law violation alleged in this Count IX;

    b.   Enter a permanent injunction to prevent future actions of Defendants;

    c.   Award such relief as the Court finds necessary to redress injury to Plaintiff Hunter resulting from Defendants' actions;

    d.   Award Plaintiff Hunter compensatory and punitive damages, costs and attorney's fees as well as such other and additional relief as the Court may determine to be just and proper.

I.  <u>VIOLATIONS OF THE MASSACHUSETTS CIVIL RIGHTS ACT ("MCRA") -- MASS. G.L c. 12, §§ 11 I AND 11 J -- COUNT X</u>

### Against All Named Defendants

123.  Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

125.  All named Defendants worked together to create a fraudulent Surety Bond, to create the "False Letters", to publicly and privately publish the fraudulent "False Letters", and/or to utter the "False Letters" and/or knowing that the "False Letters" would be uttered.

126.  Because Plaintiff Hunter is a 50% heir to Ms. Calabrese at this moment, this fraud is directed to harm Plaintiff Hunter.

127.  Because Plaintiff Hunter has a superior legal priority to Ms. McCoy to perform "personal

1    representative" services regarding Ms. Calabrese's assets, Ms. McCoy's fraudulent

2    "personal representative" acts are fraud directed to harm Plaintiff Hunter who is entitled to

3    perform "personal representative" acts and to receive just compensation for such.

4    128. Because Ms. McCoy is not the "personal representative", her fraud is directed at Plaintiff

5    Hunter, the late Ms. Calabrese, and the late Ms. Calabrese's assets (and because, in

6    December 2024, Plaintiff Hunter's sister, Joanne Auclair, formally renounced any perceived

7    right she might have had to be appointed the "personal representative" and Ms. Calabrese

8    has / had no other potential heirs.)

9    129. The fraud violates, *inter alia,* Plaintiff Hunter's Fourteenth Amendment right to protection

10    from deprivation of property without due process.

11    130. The "False Letters" gives Ms. McCoy apparent and actual authority to:

12        a.  provide fraudulent "personal representative" services,

13        b.  take money from the late Ms. Calabrese's assets held at Wells Fargo for

14            compensation for the performance of such fraudulent services,

15        c.  convert the late Ms. Calabrese's assets held at Wells Fargo in furtherance of Ms.

16            McCoy's fraud to, *inter alia,* manage, change, service, and pay insurance

17            premiums for the late Ms. Calabrese's insurance policies with Liberty Mutual

18            Holding,

19        d.  convert Ms. Calabrese's assets held at Wells Fargo in furtherance of fraud.

21                                        COUNT X

23    131. Defendants violated Plaintiff Hunter's Massachusetts Civil Rights as described herein to

24    deny, *inter alia,* Plaintiff Hunter's Fourteenth Amendment right.

PRAYER FOR RELIEF – MCRA

132. WHEREFORE, Plaintiff Hunter requests that the Court:

    a. Enter judgment against Defendants in favor of Plaintiff Hunter for each law violation alleged in these Count X;

    b. Enter a permanent injunction to prevent future violations of the MCRA by Defendants;

    c. Award such relief as the Court finds necessary to redress injury to Plaintiff Hunter resulting from Defendants' violations of the MCRA including but not limited to, restitution, and the disgorgement of ill-gotten monies;

    d. Award Plaintiff Hunter monetary civil penalties for each violation of the MCRA occurring since June 5, 2025.

    e. Award Plaintiff Hunter damages, costs and attorney's fees pursuant to, *inter alia,* Mass. G. L. c 12, § 11 I, as well as such other and additional relief as the Court may determine to be just and proper.

J.    <u>COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND DAMAGES – COUNT XI</u>

Against: Ms. McCoy; Ms. Saccomani, Official; and Ms. Saccomani, Individual

Violations of United States Civil Rights (42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986)

132. Plaintiff Hunter incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

133. Ms. McCoy acted together with "Ms. Saccomani, Official", and "Ms. Saccomani, Individual". "Ms. Saccomani, Official" and "Ms. Saccomani, Individual" are state employees and/or "state actors". "Ms. Saccomani, Official" was publicly elected as the

1    Register of the Hampden County Probate and Family Court (*see e.g.* Election results for

2    2020 at https://electionstats.state.ma.us/elections/view/140775/ ).

3    134. Plaintiff Hunter has suffered injury as a result of Ms. McCoy's actions, Mr. Ornells's

4    actions, "Ms. Saccomani, Official's" actions, and "Ms. Saccomani, Individual's" actions

5    which include, but are not limited to, violations of Mass. G.L. c 268, § 13E (Tampering with

6    record, document or other object for use in an official proceeding) ; Mass. G.L. c 267, § 1

7    (false public documents); and Mass. G.L. c 267, § 5 (uttering false public documents) to,

8    *inter alia,* perpetuate the fraud described herein.

9    135. Plaintiff Hunter continues to suffer injury presently and will suffer injury in the future

10    because of their actions.

11                                COUNT XI
12

13    136.    Ms. McCoy and "Ms. Saccomani, Official" and "Ms. Saccomani, Individual" have

14    violated 42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986.

15    PRAYER FOR RELIEF – COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY
16    JUDGMENT, AND DAMAGES – COUNT XI

17    WHEREFORE, Plaintiff Hunter requests that the Court:

18        a. Declare that Ms. McCoy; "Ms. Saccomani, Official", and "Ms. Saccomani,

19            Individual" have violated Plaintiff Hunter's fundamental rights under the United

20            States Constitution.

21        b. Declare that Ms. McCoy; "Ms. Saccomani, Official", and "Ms. Saccomani,

22            Individual" may not continue to violate Plaintiff Hunter's fundamental rights under

23            the United States Constitution.

24        c. Enjoin Ms. McCoy; "Ms. Saccomani, Official", and "Ms. Saccomani, Individual"

from future violations of Plaintiff Hunter's fundamental rights under the United

States Constitution.

    d. Preliminary and permanent injunctions prohibiting Ms. McCoy; "Ms. Saccomani,

       Official", and "Ms. Saccomani, Individual" from violating Plaintiff Hunter's

       fundamental rights under the United States Constitution;

    e. Award compensatory, consequential, exemplary, punitive, and nominal damages to

       Plaintiff Hunter in an amount to be determined at trial;

    f. For attorneys' fees and costs under 42 U.S.C. 1988(b)

    g. For such other relief as the Court deems proper.

## K.    COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES – COUNT XII

### Against: All Named Defendants

### Violations of Massachusetts Civil Rights Act (Mass. G.L c. 12, §§ 11 I - 11 J)

136. All previous paragraphs are incorporated by reference as if fully set forth herein.

137. The Massachusetts Civil Rights Act ("MCRA") has broad language which proscribes

interference, or attempted interference, by "any person" with the "exercise or enjoyment of

rights secured by the constitution and laws" of the United States or the Commonwealth, by

means of threats, intimidation or coercion. The MCRA (1) applies to private actors as well as

state actors, and (2) proscribes interference not only with federally protected rights but also

with rights secured under state laws, which may include the common law, as well as statutes

and regulations.

138.  The relevant MCRA statutes are Mass. G.L c. 12, §§ 11 H - 11 J.

139.  Defendants have violated, are violating, and will continue to violate Plaintiff Hunter's

1    Massachusetts Civil Rights.

2  140.  Defendants have acted and will continue to act with deliberate disregard and with reckless

3    disregard for Plaintiff Hunter's fundamental constitutional rights to, *inter alia,*

4        a.  use of her money and property,

5        b.  protect her money and property as described herein (ie. from loss, diminishment,

6        devaluation; increase risk of loss, diminishment, and devaluation; and/or theft).

7  141.  Defendants' violation of Plaintiff Hunter's Massachusetts civil rights has caused and will

8    continue to cause Plaintiff Hunter undue hardship and irreparable harm.

9  142.  Plaintiff Hunter has no adequate remedy at law to correct the continuing deprivation of her

10    fundamental rights.

11                    COUNT XII

12
13  143.  Defendants have violated Plaintiff Hunter's rights protected by the Massachusetts Civil Rights

14    Act (Mass. G.L c. 12, §§ 11 I - 11 J).

15
16  <u>PRAYER FOR RELIEF – COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY</u>
17  <u>JUDGMENT, AND DAMAGES – COUNT XII</u>

18
19  WHEREFORE, Plaintiff Hunter requests that the Court:

20    a.    Declare that Defendants violated Plaintiff Hunter's fundamental rights under the

21        United States Constitution, the Massachusetts Constitution, and/or many other laws

22        as set forth herein.

23    b.    Declare that Defendants may not continue to violate Plaintiff Hunter's fundamental

24        rights under the United States Constitution, the Massachusetts Constitution, and many

25        other laws as set forth herein.

1       c.   Enjoin Defendants from future violations of Plaintiff Hunter's fundamental rights

2           under the United States Constitution, the Massachusetts Constitution, and

3           Massachusetts Civil Rights Act.

4       d.   Preliminary and permanent injunctions prohibiting Defendants from violating

5           Plaintiff Hunter's fundamental rights under the United States Constitution, the

6           Massachusetts Constitution, and Massachusetts Civil Rights Act;

7       e.   Award compensatory, consequential, exemplary, punitive, and nominal damages to

8           Plaintiff Hunter in an amount to be determined at trial;

9       f.   For attorneys' fees and costs under 42 U.S.C. 1988(b)

10      g.   For such other relief as the Court deems proper.

11

12  <u>Affidavit - Verification</u>

13

14  I, Chase Hunter, am over age 18 and am the Plaintiff in this action. I testify under penalty of perjury

15  under 28 U.S.C. § 1746 that I have read the foregoing Complaint and that the actual factual

16  allegations contained in it are true and correct. All attached exhibits are true and correct copies.

17                                    *Chase Hunter*

18  Executed on August 4, 2025, at Springfield, Massachusetts.

19

20

21                           *Chase Hunter*

22                           Chase Hunter

23  Dated: Springfield, Massachusetts

24  August 4, 2025

25

26                           /s/ Chase Hunter

27

28                           Chase Hunter, pro se

29                           Defendant

30                           Mail:

31                           PO Box 2144

32                           Springfield, MA 01101

33

34                           Street (NOT FOR MAILING):

1
2
3
4
5
6
7
8

82 Wendell Ave. Ste 100
Pittsfield, MA 01201

Email: USOneLove@PandGmail.com

Tel: (413) 309-3866